KENDA RUBBER INDUSTRIAL CO.,
LTD., et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 84–7–00949.

United States Court of
International Trade.

Feb. 24, 1986.

Myron Solter for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, Michael P. Mabile, Asst. Gen. Counsel, and Brenda A. Jacobs, U.S. International Trade Com'n, for defendant.

CARMAN, Judge:

Before the Court is plaintiffs' motion for judgment upon the agency record, pursuant to Rule 56.1, in this antidumping investigation. Defendant United States opposes the motion. Plaintiffs ask for a review of the International Trade Commission's (Commission) determination in *Bicycle Tires and Tubes from Taiwan,* U.S.I.T.C. Public. 1532, Investigation No. 731–TA–166 (Final) (May 1984), that imports of bicycle tires and tubes from Taiwan are materially injuring industries in the United States.

Plaintiffs challenge the Commission's determination on basically two grounds. First, plaintiffs contend that the Commission improperly found injury to the separate tire and tube industries on the basis of aggregated data. Second, plaintiffs claim that a majority of Commission members based their determination on a period six to nine years before the date of the determination, and that the use of such a period

contravenes the language of the relevant statute. Use of the earlier period, plaintiffs claim, made it impossible to determine whether the dumping caused the injury, and a determination based on that period, when applied to present entries, operates as an unlawful penalty. For the reasons given below, the Court sustains the Commission's determination.

### Background

Before outlining the facts of this case, it may be useful to examine the procedures followed in an antidumping investigation, since much of the controversy in this case arises from a disjointed procedure that resulted from a court remand. To initiate an antidumping investigation, an interested party files a petition with the administering authority, the United States Department of Commerce (Commerce)[1] and simultaneously with the Commission, alleging the sale of imports at less than fair value (LTFV). 19 U.S.C. § 1673a(b) (1982). Within 20 days Commerce determines whether to initiate an investigation and informs the Commission of its determination. If Commerce decides to initiate an investigation, the Commission makes a preliminary determination of whether there is a reasonable indication that the alleged LTFV sales are injuring or threatening to injure a domestic industry. 19 U.S.C. § 1673b(a). If the Commission's determination is affirmative, Commerce conducts an investigation and arrives at a preliminary determination of whether there have been LTFV sales. 19 U.S.C. § 1673b(b). Commerce then performs a complete investigation and arrives at a final determination. 19 U.S.C. § 1673d(a). Finally, if Commerce's final determination is affirmative, the Commission performs its complete investigation and makes its final determination of whether the LTFV sales materially injure or threaten to injure a domestic industry. *Id.* at § 1673d(b). The statutory scheme in-volves a series of interlocking steps by the agencies, the next step of each dependent upon the prior step of the other. The statute clearly contemplates that each step will follow close upon the other, mandating a period of days for the completion of each step. From filing of the petition to the Commission's final injury determination should take 230 days, if verification is waived (*see* 19 U.S.C. § 1673b(b)(2)), to at most 420 days in an extraordinarily complicated case (*see* 19 U.S.C. § 1673b(c)).

In this case the administering authority at the time, the United States Department of Treasury (Treasury), made a negative final determination as to LTFV sales, which the petitioner appealed. Upon remand the new administering authority, Commerce, made an affirmative final determination, and the Commission then made an affirmative injury determination, several years after Treasury's initial investigation. It is the Commission's determination that plaintiffs now challenge. A more detailed history of the case follows.

In January 1978 Carlisle Tire & Rubber Co. filed a petition with Treasury alleging LTFV sales of bicycle tires and tubes from Taiwan. In December 1978 Treasury made a negative final determination of LTFV sales[2] and Carlisle appealed to this court's predecessor, the United States Customs Court. In May 1982 the court remanded that case, Court No. 79–3–00513, instructing that a different methodology be used to calculate dumping margins.

While that case was under advisement, Carlisle filed a new petition again alleging LTFV sales of bicycle tires and tubes from Taiwan. The Commission conducted a preliminary investigation and determined that there was a reasonable indication that the alleged dumping was injuring a domestic industry. U.S.I.T.C. Public. 1258, Investigation No. 731–TA–94 (Preliminary) (June

---

**1.** The administering authority is currently Commerce, but at the time of the initial investigation in this case it was the Department of Treasury. The administering authority may also initiate its own investigation. 19 U.S.C. § 1673a(a) (1982).

**2.** Because Carlisle filed its petition prior to passage of the 1979 Trade Agreements Act, Treasury did not refer the case to the Commission for a preliminary injury determination.

1982). In May 1983, however, Commerce made a final negative determination regarding LTFV sales occurring between December 1, 1981 and May 31, 1982. Carlisle's appeal of that determination to this court was designated Court No. 83-5-00773.

In October 1983 Commerce issued its redetermination in the remanded 1978 investigation, finding LTFV sales, and referred the case to the Commission for an injury determination. *See* 49 Fed.Reg. 2492 (1984). At this juncture Carlisle settled its appeal of the 1982 determination, on the basis of Commerce's affirmative redetermination in the 1978 case, and the court issued an order dismissing the appeal.

In January 1984 the Commission began its final injury determination in the 1978 case. The Commission sent a questionnaire to Carlisle[3] and to importers and purchasers of imported bicycle tires and tubes, seeking data for the period 1981–1983. During the investigation the Commission also determined that it had in its files data on the domestic industry and imports dating from 1973. The data had been collected in a 1978 investigation under section 201 of the Trade Act of 1974, preliminary antidumping and countervailing duty investigations in 1982, and a 1983 review investigation under section 104 of the Trade Agreements Act of 1979. The Commission determined that the data from these investigations were calculated on the same basis as the data in the ongoing investigation. It therefore incorporated some of the tables and the staff reports from the prior investigations into the record in the ongoing investigation.

Controversy arose during the investigation as to which time period the Commission should examine to determine injury— the period of the initial investigation, around 1978, or the "present" period, 1981–1983. Carlisle argued that the earlier period was appropriate, while the Taiwanese respondents argued for the present period. The Commissioners did not reach a unanimous decision on which time period to use, though whichever period each used, all of them found that the domestic industry was injured by LTFV sales of imports. Commissioners Stern, Haggart, and Rohr based their decision on the period 1975–1978, U.S. I.T.C. Public. 1532, at 3 n. 1, although Commissioner Haggart also noted that she had considered the 1981–1983 data and reached the same conclusion. *Id.* Then-Chairman Eckes and Commissioner Lodwick based their injury determination on the period 1975–1983. In January 1984 plaintiffs appealed the Commission's affirmative injury determination. That appeal is now before the Court.

### Opinion

■ Plaintiffs raise a number of challenges to the Commission's determination, all of which fall into basically two categories. First, plaintiffs claim that the Commission improperly found injury to the separate tire and tube industries on the basis of aggregated data. Second, they claim that the determination was based upon data from the period 1975–1978 and that the use of this earlier time period was improper. Plaintiffs claim that in committing these two errors the Commission acted *ultra vires* and its determination is therefore void. An agency action is *ultra vires* when the agency has acted beyond the scope of its defined authority. In this case, the Commission conducted an investigation and issued a determination within the confines of its statutorily granted authority. Plaintiffs present no evidence that the Commission exceeded that authority. The Court's review of agency determinations in such a case is governed by 19 U.S.C. § 1516a(b)(1)(B) (1982). Thus, under that statute, the issues in this case are whether the Commission's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law" (1) because the agency based its determination of injury to the separate tire and tube industries on data that was not

---

**3.** Defendant asserts, and plaintiff does not contest, that Carlisle was the only domestic producer of bicycle tires and tubes. *See* Defendant's Brief at 6.

segregated for 1975–1978 as to the profits for each industry, and (2) because the agency based its determination on an improper time period.

## A. *Separate Injury Based on Aggregated Profits Data*

The Commission found that the bicycle tire and bicycle tube industries were separate industries, and that each was separately injured by reason of LTFV imports. U.S.I T.C. Public. 1532, at 8, 15. To reach this determination, the Commission relied on data in its files compiled in part from previous investigations. *Id.* at 6. For the period 1979–1983 the Commission had before it segregated data regarding all relevant aspects of the domestic industries, including profits data. For the period 1975–1978 the Commission had segregated data on all relevant aspects of the domestic industries except profits. Nothing in the record of the investigation indicates that the Commission made any attempt to obtain segregated profits data for 1975–1978.

■ Under the appropriate standard of review, the first question the Court must address is whether the Commission acted in accordance with law when it failed to request segregated profits data from Carlisle for the period 1975–1978. In other words, did the Commission have an affirmative duty to attempt to obtain this data. The Court finds that the relevant statute should not be read so strictly as to impose upon the agency an affirmative duty to obtain segregated profits data.

The controlling statute is 19 U.S.C. § 1677 (1982), which contains definitions and special rules governing both countervailing duty and antidumping investigations. In determining "material injury" to a domestic industry, the Commission is required to consider the impact of the LTFV imports on the domestic industry, and is further required to "evaluate all relevant economic factors which have a bearing on the state of the industry, including, but not limited to ... profits. 19 U.S.C. § 1677(7)(C)(iii)(I) (1982). Thus to determine whether there is material injury to an industry, the Commission must look at a variety of factors, including profits. The statute further instructs the Commission to determine injury for like products separately, where possible.

> The effect of subsidized or dumped imports shall be assessed in relation to the United States production of a like product if available data permits the separate identification of production in terms of such criteria as the production process or the producer's profits.

19 U.S.C. § 1677(4)(D) (1982).

Plaintiff would have the Court construe these provisions to require the Commission to seek separate profits data in every instance where more than one industry is affected. Although ideally an investigation would include such data, neither the legislative history of the statute nor the cases construing it require such a strict reading. The Senate Report accompanying the 1979 amendment that added the present section 1677 indicates that the Commission is to consider a variety of factors relating to each separate product where separate consideration is reasonable.

> In examining the impact of imports on the domestic producers comprising the domestic industry the ITC should examine the relevant economic factors (such as profits, productivity, employment, cash flow, capacity utilization, etc.), as they relate to the production of only the like product, if available data permits a reasonably separate consideration of the factors with respect to production of only the like product.

S.Rep. No. 249, 96th Cong., 1st Sess. 83–84 (1979), U.S.Code Cong. & Admin.News 1979, 381, 469, 470. This Court had occasion to examine this passage of the Senate Report in *Roquette Freres v. United States*, 7 CIT ——, 583 F.Supp. 599 (1984). After quoting this passage the Court stated, "It is incumbent on the ITC to acquire all obtainable or accessible information from the affected industries on the economic factors *necessary for its analysis.*" 583 F.Supp. at 604 (emphasis added). Congress did not intend to require the Commission to obtain separate data on every enumerated

economic factor; rather, it directed the Commission to obtain such data, where possible, as allows it to make "a reasonably separate consideration."

That the statute does not require the Commission to seek separate data for every factor is supported by the analogous case of *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed.Cir.1984) (*rev'g* 4 CIT 248, 553 F.Supp. 1055 (1982)). That case involved a final injury determination in which the Commission considered impact on regional industries. *See* 19 U.S.C. § 1677(4)(C) (1982). One producer claimed it was unable to provide segregated data for each of its plants, and therefore could not provide data segregated by region. The Commission accordingly applied the "best information" rule, which allows it to use the best information available when a party is unable or refuses to produce requested information. *See* 19 U.S.C. § 1677e(b) (1982). This court found that the Commission's use of the aggregated data was improper, stating that the Commission could not consider data from outside the regional boundaries it had established. *Atlantic Sugar, Ltd. v. United States*, 4 CIT 248, 250, 553 F.Supp. 1055, 1058 (1982).

The Court of Appeals for the Federal Circuit reversed on this point. It found that the Commission was not required to obtain completely segregated data. 744 F.2d at 1562. Instead, the court examined the entire record to determine whether the conclusions the Commission drew from the

data were supported by substantial evidence on the record. *Id.*[4] That is the issue that must now be addressed in the instant case.

■ The "substantial evidence" standard of review has been well explicated in many decisions. *See Carlisle Tire and Rubber Co.. v. United States*, 9 CIT ——, 622 F.Supp. 1071 (1985). Review of the agency determination is limited, ensuring that agency conclusions are reasonably drawn from some evidence, more than a mere scintilla, in light of the record as a whole. Applying this standard to the Commission's determination of injury to the bicycle tire and tube industries, the Court finds that there is sufficient evidence in the record from which a reasonable mind might draw the conclusions that the Commission drew.

The Commission had before it segregated data for bicycle tires and tubes regarding domestic shipments, production, exports, consumption, capacity, manufacturing costs, prices, inventories, employment, as well as imports for consumption. The Commission also had aggregated data for profits, and segregated data for profits from 1979 forward. The Court finds that this was sufficient data from which the Commission could conclude that the domestic industries were injured during the period 1975–1978.

### B. *The Time Period of the Investigation*

■ The statute under which the Commission makes its injury determination provides in relevant part:

---

4. Plaintiffs also cite *Budd Co., Ry. Div. v. United States*, 1 CIT 67, 507 F.Supp. 997 (1980), to support their argument. That case involved a preliminary injury determination by the Commission, which the relevant statute requires be made based upon "the best information available." 19 U.S.C. § 1673b(a) (1982). The court construed the statute's command to mean that "all information that is 'accessible or may be obtained,' from whatever its source may be, must be reasonably sought by the Commission." 1 CIT at 75, 507 F.Supp. at 1003–04. The Commission in that investigation had obtained no data on domestic producers of components and parts, yet found that the domestic industry was not injured. The court held that this determination was not supported by substantial evidence in the record, and further found that the Com-

mission had not conducted a thorough investigation as required by statute. *Id.* at 79, 507 F.Supp. at 1006. Thus the court implicitly found that the determination was not in accordance with law, as well as unsupported by substantial evidence.

Although the court in *Budd Co.* used broad language imposing a duty upon the Commission to obtain *all* information, the facts in that case clearly distinguish it from the instant case. There the Commission had gathered essentially no data. Here the Commission had data relating to each of the factors enumerated in the statute, including profits. Lack of certain segregated data might render a determination unsupported by substantial evidence, but it does not make the determination out of accordance with law.

The Commission shall make a final determination of whether an industry in the United States is materially injured, or is threatened with material injury ... by reason of imports of the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a)(1) of this section.

19 U.S.C. § 1673d(b)(1). Plaintiffs contend that this statute requires the Commission to make a present determination of injury and that a majority of the Commission members erroneously based their determination on the period 1975–1978. Plaintiffs also contend that the Commission's use of the earlier period made it impossible to determine the requisite causal connection between the LTFV imports, and that the Commission's use of the earlier period when applied to present entries operates as an unlawful penalty.

Plaintiffs argue that the statute requires the Commission to look at the present period because of the present tense wording of the statute. Although the relevant section is cast in the present tense, the Court does not find this argument compelling. The statutory scheme contemplates that antidumping determinations will be made in a relatively short space of time, usually less than one year, from the time the petition is filed until the final injury determination is made. Thus Congress apparently intended the Commission's determination to follow hard upon Commerce's finding of LTFV imports. In a normal investigation, the present tense language of the statute anticipates that the Commission will examine a time period close to that examined by Commerce. In an unusual case such as this, the statutory scheme has been interrupted. Had Treasury originally found LTFV imports, the Commission would then have ex-amined the earlier period. When this Court remanded to Commerce, it directed Commerce to reexamine the period of the original investigation. There is some logic in the Commission, too, examining that earlier period. Indeed in other cases where this court has remanded to the Commission, it has directed it to look at the early period it originally investigated. *See, e.g., Roquette Freres v. United States,* 7 CIT ——, 583 F.Supp. 599 (1984).

■ The court hesitates, however, to establish an absolute rule that would require the Commission to examine a period years earlier where Commerce finds LTFV imports in a remanded case. It may not always be possible for the Commission to obtain data regarding the earlier period. As the statute does not expressly command the Commission to examine a particular period of time, the Court finds that the Commission has discretion to examine a period that most reasonably allows it to determine whether a domestic industry is injured by LTFV imports.[5]

Plaintiffs further protest that by failing to determine injury during the present period, the Commission made it impossible to find the requisite causality between the injury and the LTFV imports. Plaintiff is correct that the Commission must find that the injury occurred "by reason of" the LTFV imports. This is precisely what the Commission found. *See* U.S.I.T.C. Public. 1532, at 15. Commerce's investigation covered the period September 1, 1977 through February 28, 1978. The Commission majority based its determination on the period 1975–1978. The Court concludes that it was both possible and reasonable for the Commission to determine that the injury it found was caused by the LTFV imports

---

**5.** The Commission's determination in this investigation is rather unusual in that the Commissioners were split over which time period was most appropriate. Three Commissioners considered the 1975–1978 period, while two based their decision on 1975–1983. Of the three who looked at 1975–1978, one said that she also considered the period 1981–1983, and that "she would have reached an affirmative determina-tion based on the period 1981–83 as well." U.S. I.T.C. Public. 1532, at 3 n. 1. The Commission's analysis accompanying the determination also discussed the entire period of 1975–1983. One could argue, then, as defendant does, that a majority of the Commission's members looked both at the 1975–1978 period, and at the later 1981–1983 period, which plaintiffs contend applies.

during the time of Commerce's investigation.

■ Plaintiff finally complains that the Commission's injury determination operates as an unlawful penalty because presumably it will lead to imposition of duties on entries made after 1982, when Commerce found in its later investigation that there were no LTFV imports. The only agency action that the Court is reviewing in this case is an injury determination by the Commission, not a final antidumping duty order issued by Commerce. The Commission's determination that the domestic industries are injured by reason of the LTFV imports found by Commerce does not operate as an unlawful penalty.

### Conclusion

The Court finds that the Commission's use of aggregated profits data and its consideration of the 1975–1978 period are in accordance with law. Moreover, the Court finds the Commission's actions reasonable in light of the fact that the Commission had a wealth of data from this early period, and further finds the Commission's conclusion that LTFV imports were injuring a domestic industry is supported by substantial evidence in the record. The Commission's determination, being both supported by substantial evidence and in accordance with law, is therefore sustained.