# United States Court of Appeals for the Federal Circuit

04-1373, -1374

NUCOR CORPORATION,

Plaintiff-Appellant,

and

UNITED STATES STEEL CORPORATION,

Plaintiff-Appellant,

and

BETHLEHEM STEEL CORPORATION, NATIONAL STEEL CORPORATION,
STEEL DYNAMICS, INC., WEIRTON STEEL CORPORATION,
and INDEPENDENT STEELWORKERS UNION,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

and

AB SANDVIK STEEL (now known as AB Sandvik Materials Technology)
and SANDVIK STEEL COMPANY (now known as Sandvik Materials Technolgy),
and
ACERALIA CORPORACION SIDERURGICA, S.A.,
ARCELOR INTERNATIONAL AMERICA INC.,
ARCELOR PACKAGING INTERNATIONAL, SIDMAR, N.V.,
SOLLAC ATLANTIQUE, SOLLAC LORRAINE, and TRADEARBED, INC.,
and
BHP STEEL AMERICAS, LTD. (now BlueScope Steel Americas LLC),
BHP STEEL LLC. (now BlueScope Steel Limited),
NEW ZEALAND STEEL, LTD., and ISCOR (PTY.) LTD.,
and
CORUS STAAL BV and CORUS STEEL USA INC.,
and
DONGBU STEEL CO., LTD. and POSCO,
and

NIPPON STEEL CORPORATION, NISSHIN STEEL CO., LTD.,
KOBE STEEL LTD., JFE STEEL CORP.
(formerly known as Kawasaki Steel Corp. and NKK Corporation),
THAI COLD ROLLED STEEL SHEET PUBLIC CO., LTD., and
SUMITOMO METAL INDUSTRIES, LTD.,
and
SIDERURGICA DEL ORINOCO, C.A. and SIDERAR S.A.I.C.,
and
THYSSEN KRUPP STAHL AG and SALZGITTER AG,

Defendants-Appellees,

and
COMPANHIA SIDERURGICA NACIONAL, COMPANHIA SIDERURGICA PAULISTA,
USINAS SIDERURGICA DE MINAS GERIAS, S.A., and HYUNDAI HYSCO CO., LTD.,
and
ASSOCIATION OF GERMAN SPECIALTY COLD ROLLED
STEEL STRIP PRODUCERS,
and
BORCELIK CELIK SANAYII VE TICARET A.S.,

Defendants.

Charles Owen Verill, Jr., Wiley Rein & Fielding LLP, of Washington, DC, argued for plaintiff-appellant, Nucor Corporation. With him on the brief were Alan H. Price and Timothy C. Brightbill.

Stephen P. Vaughn, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, DC, argued for plaintiff-appellant, United States Steel Corporation. With him on the brief were Robert E. Lighthizer, John J. Mangan and James C. Hecht.

Charles A. St. Charles, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for defendant-appellee, United States. With him on the brief were James M. Lyons, Acting General Counsel, and Rhonda M. Hughes, Acting Assistant General Counsel for Litigation. Of counsel was Marc A. Bernstein, Attorney.

Robert S. LaRussa, Shearman & Sterling LLP, of Washington, DC, for defendants-appellees, Aceralia Corporation Siderurgica, S.A., ET AL. With him on the brief was Christopher M. Ryan. Of counsel were Quentin M. Baird and Julie C. Mendoza, Kaye Scholer LLP, of Washington, DC.

Lynn M. Fischer Fox, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, for defendants-appellees, BHP Steel Americas, Ltd. (now BlueScope Steel

Americas LLC), ET AL. With her on the brief were <u>John D. Greenwald</u>, <u>Robert C. Cassidy, Jr.</u>, <u>Gary N. Horlick</u> and <u>Leonard M. Shambon</u>. Of counsel was <u>Kristin H. Mowry</u>.

<u>Eric C. Emerson</u>, Steptoe & Johnson LLP, of Washington, DC, for defendants-appellees, Corus Staal BV, ET AL. With him on the brief were <u>Richard O. Cunningham</u> and <u>Tina Potuto Kimble</u>.

<u>Donald B. Cameron</u>, Kaye Scholer LLP, of Washington, DC, for defendants-appellees, Dongbu Steel Co., Ltd., ET AL. With him on the brief were <u>Juile C. Mendoza</u>, <u>R. Will Planert</u> and <u>Margaret S. Rudin</u>.

<u>Kenneth J. Pierce</u>, Willkie Farr & Gallagher LLP, of Washington, DC, for defendants-appellees, Nippon Steel Corporation, ET AL. With him on the brief were <u>William H. Barringer</u> and <u>Robert E. DeFrancesco</u>. Of counsel were <u>Christopher Dunn</u>, <u>James P. Durling</u>, <u>Daniel L. Porter</u>, <u>Matthew R. Nicely</u> and <u>Carrie L. Owens</u>.

<u>David P. Houlihan</u>, White & Case LLP, of Washington, DC, for defendants-appellees, Siderurgica Del Orinoco, C.A., ET AL. With him on the brief were <u>Gregory J. Spak</u> and <u>Richard J. Burke</u>. Of counsel was <u>Frank H. Morgan</u>.

<u>Gail T. Cumins</u>, Sharretts Paley Carter and Blauvelt, P.C., of New York, New York, for defendants-appellees, Thyssen Krupp Stahl AG, ET AL.

Appeal from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

04-1373,-1374

NUCOR CORPORATION,

Plaintiff-Appellant,

and

UNITED STATES STEEL CORPORATION,

Plaintiff-Appellant,

and

BETHLEHEM STEEL CORPORATION, NATIONAL STEEL CORPORATION,
STEEL DYNAMICS, INC., WEIRTON STEEL CORPORATION,
and  INDEPENDENT STEELWORKERS UNION,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

and

AB SANDVIK STEEL (now known as AB Sandvik Materials Technology)
and SANDVIK STEEL COMPANY (now known as Sandvik Materials Technology),
and
ACERALIA CORPORACION SIDERURGICA, S.A.,
ARCELOR INTERNATIONAL AMERICA INC.,
ARCELOR PACKAGING INTERNATIONAL, SIDMAR, N.V.,
SOLLAC ATLANTIQUE, SOLLAC LORRAINE, and TRADEARBED, INC.,
and
BHP STEEL AMERICAS, LTD. (now BlueScope Steel Americas LLC),
BHP STEEL LLC (now BlueScope Steel Limited),
NEW ZEALAND STEEL, LTD., and ISCOR (PTY.)  LTD.,
and
CORUS STAAL BV and CORUS STEEL USA INC.,

and
DONGBUSTEEL CO., LTD. and POSCO,
and
NIPPON STEEL CORPORATION, NISSHIN STEEL CO., LTD.,
KOBE STEEL LTD., JFE STEEL CORP.,
(formerly known as Kawasaki Steel Corp. and NKK Corporation),
THAI COLD ROLLED STEEL SHEET PUBLIC CO., LTD., and
SUMITOMO METAL INDUSTRIES, LTD.,
and
SIDERURGICA DEL ORINOCO, C.A. and SIDERAR S.A.I.C.,
and
THYSSEN KRUPP STAHL AG and SALZGITTER AG,

Defendants-Appellees,

and

COMPANHIA SIDERURGICA NACIONAL, COMPANHIA SIDERURGICA PAULISTA,
USINAS SIDERURGICA DE MINAS GERIAS, S.A., and HYUNDAI HYSCO CO., LTD.,
and
ASSOCIATION OF GERMAN SPECIALTY COLD ROLLED
STEEL STRIP PRODUCERS,
and
BORCELIK CELIK SANAYII VE TICARET A.S.,

Defendants.

_____

DECIDED:  July 7, 2005
_____


Before RADER, BRYSON, and GAJARSA,  Circuit Judges.

BRYSON, Circuit Judge.

The appellants, United States Steel Corporation and Nucor Corporation, are domestic steel producers.  Along with other domestic producers, they petitioned the International Trade Commission to investigate imports of cold-rolled steel products to determine if those imports were causing material injury to the domestic steel industry. See 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1).  Upon completion of its investigations, the

Commission issued final determinations that the domestic steel industry was not materially injured by reason of the imports. The appellants and other domestic producers filed an action in the Court of International Trade challenging the Commission's negative material injury determinations. The Court of International Trade sustained the Commission's determinations. Nucor Corp. v. United States, 318 F. Supp. 2d 1207 (Ct. Int'l Trade 2004). U.S. Steel and Nucor appeal. We affirm.

I

Section 201 of the Trade Act of 1974, 19 U.S.C. § 2251(a), authorizes the President to take appropriate action to protect domestic industries from substantial injury due to increased quantities of imports. In June 2001, the President requested that the Commission conduct a section 201 investigation of steel products imported between January 1997 and June 2001. Following its investigation, the Commission determined that cold-rolled steel products "were being imported into the United States in such increased quantities as to be a substantial cause of serious injury to the domestic industry" and recommended that safeguard tariffs be imposed on steel products. Consequently, in March 2002 the President imposed safeguard tariffs on steel products, including cold-rolled steel products, of 30 percent for the first year, 24 percent for the second year, and 18 percent for the third year.

In September 2001, a number of domestic steel producers petitioned the Commission to conduct the antidumping and countervailing duty investigations that gave rise to this case. The Commission's antidumping and countervailing duty investigations, which were directed to certain cold-rolled steel products, overlapped the

section 201 investigation and the subsequent imposition of tariffs on cold-rolled steel products.

The Commission's responsibility in an antidumping or countervailing duty investigation is to determine if a domestic industry is materially injured or threatened with material injury by reason of imports. See 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1). Material injury is defined as "harm which is not inconsequential, immaterial, or unimportant." Id. § 1677(7)(A). In order to make a material injury determination, the Commission must consider the volume of the imports, the effect on prices of domestic like products due to the imports, and the impact of the imports on the domestic industry's production. Id. § 1677(7)(B)(i). When considering the volume of the imports, the Commission must determine if the volume is significant. Id. § 1677(7)(C)(i). When determining the effect on price, the Commission must consider whether there has been significant price underselling and whether the domestic prices are depressed or suppressed because of the imports. Id. § 1677(7)(C)(ii).

The Commission issued final determinations on all of the subject investigations in September and November 2002. In those determinations, the Commission found that the "Section 201 investigation and the President's remedy fundamentally altered the U.S. market for many steel products, including cold-rolled steel." The Commission found that imports of those products declined sharply and that domestic prices increased significantly in the period after the imposition of the section 201 tariffs. The Commission further reported that, according to purchasers, the reduction in imports due to the section 201 tariffs had led to "higher prices, supply shortages, and some broken or renegotiated contracts." Based on the results of its investigation, the Commission

04-1373,-1374                                    4

concluded that the section 201 relief was the principal reason for the sharp decline in imports near the end of the investigation period. The Commission further found that, as of the conclusion of the antidumping and countervailing duty proceedings, "the domestic cold-rolled steel products industry is neither materially injured nor threatened with material injury by reason of subject imports." Because the Commission determined that the domestic industry was not suffering present material injury or a threat of material injury as a result of the subject imports, no antidumping or countervailing duties were imposed.

In the Court of International Trade, the domestic producers argued that the Commission's negative material injury determinations were flawed because, among other reasons, the Commission failed to consider the effects of imports in the early portion of the investigation period; it failed to make a determination regarding the significance of importers' underselling of domestic producers; and it erred in its determinations regarding the volume of imports and their impact on domestic prices. In a detailed opinion, the trial court sustained the Commission's determinations.

II

U.S. Steel and Nucor argue that the Commission erred by failing to consider the effects of products imported prior to the imposition of section 201 tariffs when it determined that the domestic industry was not suffering current material injury because of imports. In particular, they contend that the requirement in 19 U.S.C. §§ 1671d(b)(1) and 1673d(b)(1) that the Commission determine whether the domestic industry is suffering material injury "by reason of imports" mandated that the Commission consider the effects of imports throughout the period of investigation and not confine its

consideration to the effects of current imports. Because, in the appellants' view, the Commission based its material injury determinations solely on current imports, the appellants argue that the Commission's material injury determination was legally flawed.

The trial court held that the Commission had reasonably construed the phrase "by reason of imports" in 19 U.S.C. §§ 1671d(b)(1) and 1673d(b)(1) to allow it to focus its investigation on the most recent import data. The court explained that the Commission had investigated imports for the entire period of investigation. Although the Commission had focused mainly on current imports, it had also considered imports during the early portion of that period in assessing the volume of imports, their effects on price, and the overall impact of imports on the domestic industry. The Commission's particular focus on current imports, according to the trial court, was "in accord with the remedial purpose of duties which are intended merely to prevent future harm to the domestic industry by reason of unfair imports that are presently causing material injury." The court also found that although the Commission did not state explicitly that past imports were not causing present material injury, it implicitly made that determination. According to the court, the Commission properly assessed the effects of imports early in the investigation period in light of the evidence that there was a steep decline in imports near the end of the investigation period.

Sections 1671d(b)(1) and 1673d(b)(1) state that the Commission must determine whether a domestic industry "is materially injured . . . by reason of imports." They do not specify how the Commission should weigh imports early in the period of investigation as compared to imports closer to the date of decision, nor do they provide any guidance as to the considerations that should influence the weight the Commission

assigns to data from different portions of the investigation period. Because the statutes are silent on those issues, and because the Commission, together with the Commerce Department, is charged with the responsibility of administering the antidumping and countervailing duty statutes, the Commission's construction of those statutes is entitled to deference under the principles of Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See Comm. for Fairly Traded Venezuelan Cement v. United States, 372 F.3d 1284, 1289 & n.2 (Fed. Cir. 2004); Tx. Crushed Stone Co. v. United States, 35 F.3d 1535, 1540 (Fed. Cir. 1994); Suramerica de Aleaciones Laminadas v. United States, 966 F.2d 660, 665 & n.5 (Fed. Cir. 1992).

We agree with the trial court that it was reasonable for the Commission to interpret the statutory language to permit it to accord different weight to imports during different portions of the period of investigation depending on the facts of each case. In particular, the Commission acted reasonably in construing the statutory language to permit it to focus on the most recent imports and pricing data. That construction is reasonable for several reasons. First, the purpose of antidumping and countervailing duty laws is remedial, not punitive or retaliatory, see Chaparral Steel Co. v. United States, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990), and current data typically is the most pertinent in determining whether remedial measures are necessary, see Chr. Bjelland Seafoods A/S v. United States, 19 Ct. Int'l Trade 35, 44 n.22 (1995). Second, section 1677(7)(B)(i) provides that, in making the material injury determination required by sections 1671d(b)(1) and 1673d(b)(1), the Commission shall consider, inter alia, the effects of the subject imports on domestic producers. Section 1677(7)(C)(iii) in turn requires the Commission, in determining the impact of the subject imports on domestic

producers, to "evaluate all relevant economic factors which have a bearing on the state of the industry in the United States." As the trial court explained, in most cases the most recent imports will have the greatest relevance to the current state of the domestic industry. Third, the Commission has broad discretion with respect to the period of investigation that it selects for purposes of making a material injury determination. As the Court of International Trade has explained, because the statute "does not expressly command the Commission to examine a particular period of time . . . the Commission has discretion to examine a period that most reasonably allows it to determine whether a domestic industry is injured by [less than fair value] imports." Kenda Rubber Indus. Co. v. United States, 630 F. Supp. 354, 359 (Ct. Int'l Trade 1986). Since the Commission has broad discretion to choose the most appropriate period of time for its investigation, it would be nonsensical to hold that once the Commission has chosen an investigation period, it is required to give equal weight to imports throughout the period it has selected. For these reasons, both this court and the Court of International Trade have typically upheld the Commission's exercise of its discretion to focus on imports during particular portions of the investigation period, especially imports during the most recent portion of that period. See Chaparral Steel, 901 F.2d at 1103; Taiwan Semiconductor Indus. Ass'n v. United States, 93 F. Supp. 2d 1283, 1294 n.13 (Ct. Int'l Trade 2000), aff'd, 266 F.3d 1339 (Fed. Cir. 2001); Angus Chem. Co. v. United States, 944 F. Supp. 943, 947-48 (Ct. Int'l Trade 1996), aff'd, 140 F.3d 1478 (Fed. Cir. 1998).

In this case, the fact that section 201 tariffs were imposed during the period of investigation made the recent data far more probative than earlier data as to whether the industry was suffering present material injury as a result of imports. The

Commission found that the section 201 relief "was having a major impact in the U.S. market for cold-rolled steel and was the overwhelming factor in the sharp decline in subject imports during the most recent period examined." Substantial evidence in the record supports that finding, and the appellants do not challenge the trial court's determination in that regard. Because the imposition of section 201 tariffs had such a dramatic impact on the industry, it was reasonable for the Commission to conclude that the most recent data was the most reliable indicator of whether the industry was suffering material injury as a result of the subject imports and whether the imposition of additional duties would be consistent with the remedial purposes of the antidumping and countervailing duty laws.

The appellants argue that the Commission did not simply assign greater weight to current imports, but that it improperly focused exclusively on current imports and failed to give any consideration to whether the domestic industry was suffering material injury by reason of past imports. They contend that the record does not support the trial court's conclusion that the Commission examined imports over the entire investigation period in making its determination that the subject imports were not causing present material injury.

In making the statutory determination that the domestic cold-rolled steel industry was not suffering material injury by reason of the subject imports, the Commission explained that it focused principally on "the current volume of subject imports and the increase in domestic prices in 2002." The Commission concluded that the present condition of the domestic industry was not "attributable in any material respect to the current subject imports" and that "subject imports are not adversely affecting domestic

prices to a significant degree." Its ultimate finding was that there was no "material injury currently being experienced by the domestic industry . . . by reason of the subject imports," i.e., the imports during the period of investigation. The Commission thus explained that its material injury determination, although focusing mainly on current imports, was not restricted solely to current imports but encompassed all "subject imports" during the investigation period.

The appellants do not argue that past imports continued to cause material injury at the end of the investigation period because of accumulated inventories. Nor could they, as the evidence showed that by the end of that period there were widespread supply shortages in the industry, and many producers had been placed on allocation. Instead, the appellants argue that the Commission ignored the continuing price effects of earlier imports resulting from the fact that the prices set in contracts made earlier in the period of investigation were generally "locked in" at the time of contract formation and continued in effect throughout the later portions of the investigation period. Contrary to the appellants' contention, however, the Commission took those facts into consideration; it simply did not find that they were sufficiently important to alter the ultimate material injury determination. Thus, the Commission noted that past imports "continue[d] to have an effect on the industry's contract prices negotiated before the Section 201 relief was effective," but it nonetheless concluded that imports were not adversely affecting domestic prices to a significant degree "based on the current volume of subject imports and the increase in domestic prices in 2002." In light of that statement and other portions of the Commission's opinion, the trial court ruled that although the Commission did not explicitly state that earlier imports were not causing

present material injury, it was reasonable to infer that the Commission so concluded. In particular, the trial court rested its conclusion with respect to that issue on what it referred to as the Commission's "continued discussion of the effects that subject imports entered earlier in the [period of investigation] had on the domestic industry and its ultimate conclusion that the domestic industry was not suffering present material injury."

We concur in the trial court's analysis. The Commission may not have stated explicitly that earlier imports were not causing material injury, but that conclusion was implicit in its analysis. The clear implication of the Commission's findings on that issue is that the prices fixed by contracts that were negotiated earlier in the investigation period may have suppressed the overall average price of domestic products throughout the period, but in light of the decrease in the current volume of imports and the increase in domestic prices in 2002, the effect of those past imports was not significant. We therefore uphold the trial court's decision with regard to the adequacy of the Commission's treatment of the subject imports from early in the investigation period.

III

Nucor argues that the Commission failed to make the statutorily required determination regarding the effect of underselling of domestic products by importers. The statute requires that in considering the effect of imports on prices,

> the Commission shall consider whether—
>    (I) there has been significant price underselling by the imported merchandise as compared with the price of domestic like products of the United States, and
>    (II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

19 U.S.C. § 1677(7)(C)(ii). Nucor argues that in analyzing underselling by the subject imports, the Commission failed to satisfy its statutory obligation to analyze underselling and price suppression separately.

The trial court held that the Commission had complied with the requirements of section 1677(7)(C)(ii). As the court noted, the Commission compared underselling margins in 1999 with underselling margins in 2002, and it found that "most of the underselling occurred earlier in the period examined, prior to the imposition of Section 201 relief." The court ruled that it was reasonable for the Commission to compare underselling margins in 1999 to those in 2002 and that the Commission had discretion to choose the method it used to make its determination as to the significance of underselling.

Nucor contends that the Commission did not properly assess the significance of underselling because it "failed to provide either a concrete conclusion regarding the significance of underselling or any meaningful discussion of several key components required for such a conclusion." In particular, Nucor objects that the Commission never made a determination as to whether the level of underselling during the period of investigation was significant and that it failed to make separate determinations as to underselling and the effect of imports in depressing prices or preventing price increases. Because the Commission did not make separate findings with respect to those issues, Nucor argues that the decision cannot be sustained.

The Commission complied with the statutory requirement that it consider whether there had been underselling during the investigation period and whether that underselling was significant. The Commission found that the underselling margins of

1999 had essentially disappeared by 2002. In particular, the Commission found that the average margin of underselling went from 9.1 percent in 1999 to an average overselling margin of 4.0 percent in 2002, and that for sales to end users the average underselling went from 24.8 percent in 1999 to 1.5 percent in 2002. It is true, as Nucor contends, that the Commission did not state in so many words that the volume of underselling was an insignificant factor in evaluating whether the effect of imports on prices had led to present material injury to the domestic industry. Nonetheless, the trial court found that to be the plain import of the Commission's analysis, and we agree. Where an agency has not made a particular determination explicitly, the agency's ruling nonetheless may be sustained as long as "the path of the agency may be reasonably discerned." Ceramica Regiomontana, S.A. v. United States, 810 F.2d 1137, 1139 (Fed. Cir. 1987), quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974). In this case, the agency's path is clear, even though it did not set forth its conclusion as to the issue of underselling explicitly.

Nucor objects to the trial court's reliance on Ceramica on the ground that Ceramica addressed an issue of methodology, rather than a mandatory statutory determination. However, Nucor cites no authority for its conclusion that the court may not uphold an agency's statutory determination "of less than ideal clarity," and nothing in Ceramica indicates that the principle is limited to issues of methodology.

In Altx, Inc. v. United States, 167 F. Supp. 2d 1353, 1365 (Ct. Int'l Trade 2001), aff'd, 370 F.3d 1108 (Fed. Cir. 2004), the Court of International Trade held that the Commission was required to make two distinct determinations, one for each prong of section 1677(7)(C)(ii), and that it could not "simply refer to its conclusion regarding the

effect of underselling on price depression and/or suppression as a basis for finding underselling not to be significant." Nucor argues that the Commission violated that principle by conflating the two prongs of the price effects analysis. In fact, however, the Commission discussed underselling separately from its discussion of price depression and suppression. The Commission thus did not conflate the two prongs of section 1677(7)(C)(ii).

Nucor next argues that in prior cases the Commission has explicitly addressed the significance of underselling and that its failure to do so in this case violates the principle that when an agency deviates from a longstanding practice, it must explain why it has done so. See Sec'y of Agric. v. United States, 347 U.S. 645, 652-53 (1954); British Steel PLC v. United States, 127 F.3d 1471, 1475 (Fed. Cir. 1997). Nucor, however, has not established that the Commission deviated from a longstanding practice of addressing underselling in a particular way in its final determinations. Rather, as the trial court noted, the Commission "has recognized that each injury investigation is sui generis, involving a unique combination and interaction of many economic variables; and consequently, a particular circumstance in a prior investigation cannot be regarded by the [Commission] as dispositive of the determination in a later investigation." We agree with the trial court that the Commission's determinations in other 2002 investigations do not detract from the reasonableness of the Commission's analysis of underselling in this case.

Finally, Nucor contends that the Commission erred by ignoring the volume of current underselling, which in the first quarter of 2002 increased to its highest level since the third quarter of 1999. As the trial court noted, however, the volume of

underselling in the second quarter of 2002 decreased to zero, and the Commission was not "obligated to conduct a price comparison analysis that accounts for variations in sales volumes." Nippon Steel Corp. v. United States, 182 F. Supp. 2d 1330, 1341 (Ct. Int'l Trade 2001). There is no indication that the Commission failed to consider the volume of underselling during each quarter, and we agree with the trial court that the underselling data for the first quarter of 2002 does not undermine the Commission's conclusion as to the absence of significant underselling.

IV

Nucor next challenges the Commission's determinations regarding the volume and price effects of imports on the domestic industry. Nucor again asserts that the Commission impermissibly focused only on current imports from the period after the section 201 remedy. We have already addressed the issue of the Commission's focus on the most recent imports in making its material injury determination, and we have upheld the Commission's decision in that regard. As we noted in the course of that discussion, although the Commission focused principally on the most recent imports, it considered all the subject imports in making its material injury determination and concluded that "any material injury being experienced by the domestic industry [is not] by reason of the subject imports." As noted, the trial court held that substantial evidence supported the Commission's finding that the subject imports did not suppress or depress domestic prices, even in light of the evidence that some existing contracts with lower pricing continued to be honored during the period of investigation, and we uphold the trial court's decision in that regard. Our resolution of that issue answers

Nucor's contention that the Commission failed to determine whether past imports had caused present material injury to the domestic industry.

Nucor further contends the Commission had a statutory obligation to distinguish between the effects of the section 201 relief and the effects that the filing of the antidumping and countervailing duty petitions had on the most recent import data. The relevant statutory provision, 19 U.S.C. § 1677(7)(I), states:

> Consideration of post-petition information. The Commission shall consider whether any change in the volume, price effects, or impact of imports of the subject merchandise since the filing of the petition in an investigation under [19 U.S.C. §§ 1671-1671h and 1673-1673h] is related to the pendency of the investigation and, if so, the Commission may reduce the weight accorded to the data for the period after the filing of the petition in making its determination of material injury, threat of material injury, or material retardation of the establishment of an industry in the United States.

That provision requires the Commission to consider whether changes in the industry are related to the pendency of an antidumping or countervailing duty investigation, although it gives the Commission discretion in determining how to assess post-filing information. The Statement of Administrative Action issued in connection with the Uruguay Round of the General Agreement on Tariffs and Trade is to the same effect. See Uruguay Round Agreements Act: Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, at 853-54 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4186.

The Commission specifically adverted to the change in import volumes following the filing of the petitions and found that "both the pending investigations and the Section 201 investigation had an impact on subject import volumes." Based on its analysis of the data, however, the Commission concluded that the section 201 relief "fundamentally altered the U.S. market for cold-rolled steel and was the most significant factor in the

decline of subject imports." The Commission thus explicitly found that the section 201 remedy recommendations and the imposition of section 201 tariffs was more significant than the effect of the pendency of the antidumping and countervailing duty investigations. The Commission's analysis therefore satisfied the statutory requirement that it consider the effects of the subject antidumping and countervailing duty investigations on the volume of imports, their price effects, and their impact on the domestic industry.

In sum, the Commission's findings on the statutory issue of material injury by reason of imports and on the various subsidiary issues could have been more explicit, and the Commission's analysis of the reasons for its findings could have been more detailed. Nonetheless, as the trial court correctly ruled, judicial review of an agency's findings does not demand expansive discussion or rigid adherence to a specific formula, as long as the court can determine that the statutory requirements have been satisfied. Because we do not agree with the appellants' contention that the Commission failed to comply with several essential requirements of the antidumping and countervailing duty statutes, we affirm the trial court's ruling upholding the Commission's determination.

AFFIRMED.
