# United States Court of Appeals for the Federal Circuit

---

**HITACHI METALS, LTD., HITACHI METALS AMERICA LLC,**
*Plaintiffs-Appellants*

**DAIDO STEEL CO., LTD.,**
*Plaintiff*

**v.**

**UNITED STATES, ARCELORMITTAL USA LLC, NUCOR CORPORATION,**
*Defendants-Appellees*

---

2019-1289

---

Appeal from the United States Court of International Trade in Nos. 1:17-cv-00140-MAB, 1:17-cv-00165-MAB, Judge Mark A. Barnett.

---

Decided: February 7, 2020

---

DANIEL CANNISTRA, Crowell & Moring, LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by ROBERT L. LAFRANKIE, PIERCE LEE.

BRIAN RUSSELL SOISET, Office of General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee United States. Also

represented by ANDREA C. CASSON, DOMINIC L. BIANCHI.

BROOKE MICHELLE RINGEL, Kelley Drye & Warren, LLP, Washington, DC, argued for defendant-appellees Arcelormittal USA LLC, Nucor Corporation. Defendant-appellee Arcelormittal USA LLC also represented by KATHLEEN CANNON, ROBERT ALAN LUBERDA, PAUL C. ROSENTHAL.

ALAN H. PRICE, Wiley Rein, LLP, Washington, DC, for defendant-appellee Nucor Corporation. Also represented by STEPHANIE MANAKER BELL, CHRISTOPHER B. WELD.

———————————

Before MOORE, REYNA, and STOLL, *Circuit Judges.*

REYNA, *Circuit Judge.*

In 2017, the U.S. International Trade Commission issued a final affirmative determination that a U.S. domestic industry was materially injured by virtue of imported steel goods sold at less than fair value. Hitachi appealed to the United States Court of International Trade, challenging the Commission's "domestic like product" determination. The Court of International Trade affirmed the Commission's domestic like product determination. Hitachi appeals that judgment. Because we conclude that the Commission's "domestic like product" determination is supported by substantial evidence and otherwise not contrary to law, we affirm.

## BACKGROUND

This case arises from an antidumping duty investigation on imports of carbon and alloy steel cut-to-length plate

("CTL plate").[1] On April 8, 2016, three domestic producers of CTL plate ("petitioners") filed petitions with the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission ("Commission"), alleging that imports of CTL plate from twelve countries, including Japan, were sold in the United States at less than fair value, and that an industry in the United States was materially injured as a result. *Carbon and Alloy Steel Cut-to-Length Plate*, 81 Fed. Reg. 22116 (April 14, 2016) (Institution Decision). Both the Commission and Commerce initiated antidumping duty investigations. *Id.* Hitachi Metals, Ltd., and Hitachi Metals America, LLC ("Hitachi") joined the Commission investigation, identifying itself as "a Japanese producer . . . and U.S. importer of carbon and alloy steel cut-to-length plate." *Carbon and Alloy Steel Cut-to-Length Plate*, Inv. No. 701-560 USITC Pub. 590311 (Sept. 12, 2016).

## I.  "Domestic Like Product"

Commerce and the Commission play separate and distinct roles in the administration of antidumping duty investigations. 19 U.S.C. § 1673. Generally, Commerce investigates whether certain imported articles are sold in the United States at less than fair value, i.e., "dumped." *Cleo Inc. v. United States*, 501 F.3d 1291, 1294 (Fed. Cir. 2007). The Commission investigates whether a U.S. "domestic industry" is materially injured or threatened with material injury by reason of those imports. *Id.* at 1295.

Central to antidumping duty investigations, and central to this appeal, are Commerce's and the Commission's separate determinations as to the products relevant to their respective inquiries. Commerce identifies the scope

---

[1]    The investigations involved both antidumping duty and countervailing subsidies investigation. This appeal involves only the antidumping duty investigation.

of imported articles subject to the investigation, referred to as the "subject merchandise." *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1374–75, 1375 n.2 (Fed. Cir. 2001); *see* 19 U.S.C. § 1677(25). The Commission, on the other hand, determines the "domestic like product." The "domestic like product" is a U.S. product "which is like, or . . . most similar in characteristics and uses" to the subject merchandise. *Cleo Inc.*, 501 F.3d at 1295 (quoting 19 U.S.C. § 1677(10)). The Commission's definition of which domestic goods constitute "like products" determines the relevant domestic industry and, in turn, the scope of the Commission's injury analysis. *Id.*

By statute, the Commission's "domestic like product" analysis begins with a review of the "articles subject to investigation," i.e., the subject merchandise as determined by Commerce. 19 U.S.C. § 1677(10) (defining "domestic like product" as a "product which is like, or in the absence of like, most similar in characteristics and uses with, *the article subject to an investigation*" (emphasis added)). The Commission then conducts a six-factor inquiry that evaluates whether the subject merchandise corresponds with a single domestic like product or multiple domestic like products. *Cleo*, 501 F.3d at 1295. Specifically, the Commission compares the imported articles and domestic products by considering: (1) physical characteristics and uses; (2) channels of distribution; (3) interchangeability; (4) customer and producer perceptions; (5) common manufacturing facilities, production processes, and production employees; and where appropriate (6) pricing. *Id.; Timken Co. v. United States*, 913 F. Supp. 580, 584 (Ct. Int'l Trade 1996). The Commission may determine that the subject merchandise identified by Commerce encompasses one or more domestic like products. *Cleo*, 501 F.3d at 1295.

## II. The Commission's Investigation

In May 2016, the Commission published its preliminary determination which included a preliminary like

product determination. *Carbon and Alloy Steel Cut-to-Length Plate*, 81 Fed. Reg. 33705–06 (May 27, 2016) (Preliminary Determination); J.A. 121–136. The Commission reviewed Commerce's subject merchandise determination and then performed the six-factor analysis based on the evidentiary record existing at that time. J.A. 121–133. The Commission concluded that the U.S. domestic industry consists of "a single domestic like product consisting of all CTL plate *coextensive with the scope of these investigations*." J.A. 130 (emphasis added). Specifically, the Commission defined the domestic like product as:

> Certain carbon and alloy steel hot-rolled or forged flat plate products not in coils, whether or not painted, varnished, or coated with plastics or other non-metallic substances. Subject merchandise includes plate that is produced by being cut-to-length from coils and plate that is rolled or forged into a discrete length. The products covered include (1) Universal mill plates (i.e., flat-rolled products rolled on four faces or in a closed box pass, of a width exceeding 150 mm but not exceeding 1250 mm, and of a thickness of not less than 4 mm, which are not in coils and without patterns in relief), and (2) hot-rolled or forged flat steel products of a thickness of 4.75 mm or more and of a width which exceeds 150 mm and measures at least twice the thickness, and which are not in coils, whether or not with patterns in relief. The covered products described above may be rectangular, square, circular or other shapes and include products of either rectangular or non-rectangular cross-section where such non-rectangular cross-section is achieved subsequent to the rolling process, i.e., products which have been "worked after rolling," (*e.g.*, products which have been beveled or rounded at the edges).

J.A. 122–23. The Commission also incorporated certain limitations adopted in Commerce's subject merchandise

determination, such as limitations related to width and thickness, iron and carbon content, and third country processing. *Id.* In addition, the Commission incorporated Commerce's seven express exclusions, which included: "products clad, plated, or coated in metal," "military grade armor plate," "stainless steel plate," and "[a]lloy forged and rolled CTL plate." J.A. 123–127. None of the limitations or exclusions related to tool steel.

After the preliminary determination, the Commission issued questionnaires to relevant parties, including domestic producers, importers, purchasers, and foreign producers in the subject countries. *See* 19 CFR § 207.20(b). Before issuing the questionnaires, the Commission circulated drafts to the parties for comment. *Id.* Three importers, including Hitachi, submitted comments, asking the Commission to collect separate data for "tool steel" so that the Commission could consider whether tool steel is a separate domestic like product. The Commission granted the request and issued a supplemental questionnaire seeking tool steel data from domestic producers. Four domestic producers responded with information. The Commission also contacted domestic producers who did not respond to the questionnaire. The Commission also collected additional data via telephone and email from several of those producers.

After receiving additional briefing and conducting the public hearing, the Commission undertook another domestic like product analysis in view of the full record. The Commission "examined closely whether the record support[ed] finding a clear dividing line between tool steel and high speed steel on the one hand, and other CTL plate products on the other." J.A. 2118; *see also* J.A. 2111–2119. After noting that the evidence was "mixed," the Commission found no clear dividing lines between tool steel and other CTL plate products and concluded that defining tool steel as a separate domestic like product was "not warranted." *Id.* As a result, the Commission reaffirmed its preliminary

determination of a single domestic like product coextensive with Commerce's subject merchandise determination.  *Id.*

### III.  Court of International Trade

Hitachi appealed the Commission's final determination to the Court of International Trade.[2]  Hitachi argued that the Commission's like product determination was legally erroneous and unsupported by substantial evidence. The Court of International Trade rejected Hitachi's arguments and affirmed the Commission's determination.

Hitachi timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

This court conducts de novo review of appeals from the Court of International Trade that involve a Commission like product determination.  In doing so, we apply the same standard of review applied by the Court of International Trade:  we ask whether the Commission's like product determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. §§ 1516a(b)(1)(B)(i), 1516a(a)(2)(B)(i); *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350 (Fed. Cir. 2006).

Under the substantial evidence standard of review, "we must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion."  *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004) (internal citations and quotations omitted).  While a party "may disagree with the conclusions drawn by the Commission and offer reasonable, alternate explanations . . . , it is

---

2    Daido Steel Co., Ltd. joined Hitachi in appealing the Commission's final determination to the Court of International Trade.  For purposes of this opinion, we refer to both parties as "Hitachi."

not the role of this court to refind the facts or interpose [our] own determinations." *Id.* at 1123–24 (internal quotations omitted).

Hitachi raises essentially the same three arguments that it raised to the Court of International Trade. Hitachi contends that the Commission's like product determination was erroneous because: (i) the Commission unlawfully presumed that the domestic like product was coextensive with Commerce's subject merchandise determination; (ii) the Commission's inclusion of tool steel unlawfully ignored a 35-year established agency practice; and (iii) the Commission's inclusion of tool steel was not supported by substantial evidence. We address each argument in turn.

First, Hitachi contends that the Commission's like product analysis was legally erroneous because the Commission "employed a presumption that the domestic like product is coextensive with the scope" of investigation. Appellant Br. 21–24; Oral Arg. at 1:30–7:15. Hitachi explains that Congress separately defined "domestic like product" and "subject merchandise" in 19 U.S.C. § 1677, and that the Commission failed to give those terms their separate meanings. Appellant Br. 17–18. Hitachi further contends that the Commission's use of an "unlawful presumption" is evidenced by its "arbitrary" inclusion of tool steel and exclusion of "very similar" products like stainless steel. Appellant Br. at 24, 41 n.18. Hitachi asserts that the subject merchandise is "irrelevant" to the Commission's like product determination. Appellant Br. 22 ("whether a product falls in or out of the scope is irrelevant when determining whether it constitute[s] a separate like product"). We disagree.

Commerce's subject merchandise determination is not "irrelevant" to the Commission's like product determination. Just the opposite: the subject merchandise determination is "necessarily the starting point of the Commission's like product analysis." *Cleo*, 501 F.3d at

1298 n.1 (citing 19 U.S.C. § 1677(10)). The statute requires the Commission to consider Commerce's subject merchandise determination in reaching its own like product determination. To do otherwise risks creating two disconnected agency investigations.

Hitachi cites cases holding that the Commission's like product determination must be "separate and distinct" from Commerce's subject merchandise determination. Appellant Br. 19–20 (citing *Hosiden Corp. v. Advanced Display Mfrs. Of Am.*, 85 F.3d 1561, 1567 (Fed. Cir. 1996); *Acciai Speciali Terni S.p.A. v. United States*, 118 F. Supp. 2d 1298, 1304 (Ct. Int'l Trade 2000)). Those cases do not support Hitachi's arguments. There is no dispute that the Commission's like product determination must be separate and distinct from Commerce's subject merchandise determination. *See Hosiden*, 85 F.3d at 1568 ("Commerce's designation of the class or kind of merchandise sold at [less than fair value] does not control the Commission's definition of the industry injured in its sales of like products."). Hitachi cites no authority that precludes the Commission from determining that the domestic like product and the subject merchandise are coextensive. *See* 19 U.S.C. § 1677(10) (defining domestic like product as the product "most like . . . the article subject to investigation" (emphasis added)).

We are also unpersuaded by Hitachi's argument that the Commission was required to compare tool steel to products outside of Commerce's subject merchandise determination. *See* Appellant Br. 24, 41 n.18. The statute does not require such a broad analysis. 19 U.S.C. § 1677(10). To the contrary, it instructs the Commission to confine its like product determination to a comparison between domestic products and "the article subject to an investigation." *See id.* Hitachi provides no authority to the contrary.

In *Cleo*, we rejected the argument that "the Commission allowed Commerce's finding to shape its like product

determination." 501 F.3d at 1298 n.1. We noted that the Commission had expressly recognized the "settled rule that Commerce's [subject merchandise] finding does not control the Commission's [like product] determination." *Id.* In the present case, the Commission expressly articulated the same rule:

> Although the Commission must accept Commerce's determination as to the scope of the imported merchandise that is subsidized or sold at less than fair value, the Commission determines what domestic product is like the imported articles Commerce has identified. . . . *Cleo*, 501 F.3d at 1298 n.1 ("Commerce's [scope] finding does not control the Commission's [like product] determination]").

J.A. 2088–2089, 2089 n.12 (brackets in original). Here, as in *Cleo*, "we do not perceive that the Commission's like product analysis was biased towards finding . . . a single like product in order to conform its finding with the scope of Commerce's [determination]." *See Cleo*, 501 F.3d at 1298 n.1.

Second, Hitachi argues that the Commission's like product analysis was legally erroneous because it disregarded a 35-year "established practice" of "treating tool steel as separate and distinct from all other steel." Appellant Br. 25–28. Hitachi explains that the Commission failed to either "conform itself to its prior decisions or explain the reasons for departing from" its long-established agency practice. Appellant Br. 30. We disagree.

The cases Hitachi cites involve proceedings brought under different statutory provisions, different products, and different periods of investigation. *See* J.A. 19–29. Hitachi fails to cite a single antidumping investigation that involved the same subject merchandise as this case and where tool steel was excluded from the Commission's definition of domestic like product. *See id.* As we have previously explained, each antidumping duty investigation "is

*sui generis*, involving a unique combination and interaction of many economic variables." *Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005). That the Commission reached different outcomes in cases with different circumstances "do[es] not indicate that the Commission either committed legal error in the methodology it used in this case or departed from the mode of analysis it regularly employs." *Cleo*, 501 F.3d at 1299.

Third, Hitachi argues that the Commission's like product analysis is not supported by substantial evidence. Hitachi does not contest any specific aspect of the Commission's factual findings. Instead, Hitachi faults the Commission for having "failed to fully collect" the information relevant to its like product analysis, and that the Commission "disregarded more than 90 percent of [the] relevant industry." Appellant Br. 44–45, 50. Hitachi argues that the Commission's failure to collect data led to an infirm record and renders the like product determination unsupported by substantial evidence. We disagree.

The Commission satisfied its obligation to conduct "investigative activities" under 19 CFR § 207.20(b). In response to the supplemental questionnaires it issued at Hitachi's request, the Commission received data from four domestic tool steel producers. The Commission also sought out non-responding manufacturers via telephone and email, and successfully collected data from several of those parties. Contrary to Hitachi's argument that the Commission "disregarded" information from tool steel producers, the record shows that several entities Hitachi named as tool steel producers reported that they do not produce tool steel. Based on the administrative record, we conclude that the Commission's like product investigation and evidence collection was not unreasonable. As a result, the Commission's like product conclusions are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

We have considered Hitachi's other arguments and find them unpersuasive.

## CONCLUSION

Finding no error in the Commission's like product determination, we affirm the judgment of the Court of International Trade.

## **AFFIRMED**

### COSTS

No costs.