MBL (USA) CORPORATION and Mitsuboshi Belting Limited, Plaintiffs,

v.

The UNITED STATES, Defendant.

MBL (USA) CORPORATION and Mitsuboshi Belting (Singapore) PTE, Ltd., Plaintiffs,

v.

The UNITED STATES, Defendant.

Court Nos. 89–07–00403, 89–07–00404.

United States Court of International Trade.

March 5, 1992.

Sonnenberg, Anderson, O'Donnell & Rodriguez, Steven P. Sonnenberg, Michael A. Johnson and Michael J. Spain, Chicago, Ill., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, M. Martha Ries, and Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce (Pamela Green and Maria T. Solomon, Washington, D.C., of counsel), for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Jessica Wasserman, Washington, D.C. (James E. Nelson, Gates Rubber Co., of counsel), for intervenor-defendant.

## OPINION

AQUILINO, Judge:

Following the court's slip op. 90–23, 14 CIT ——, 733 F.Supp. 379 (1990), familiarity with which is presumed, the plaintiffs have filed motions for summary judgment on their remaining asserted causes of action for release of bonds and refund of deposits of estimated antidumping duties on imports of power-transmission belts from Japan and Singapore entered between February 1 and June 7, 1989.

### I

The dates specified are those on which the International Trade Administration, U.S. Department of Commerce ("ITA") published its *Preliminary Determination of Sales at Less Than Fair Value: Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Singapore,* 54 Fed.Reg. 5,110, and *Preliminary Determination of Sales at Less Than Fair Value: Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed.Reg. 5,114, and on which the U.S. International Trade Commission ("ITC") published its final injury determinations at 54 Fed.Reg. 24,430 for those products and countries of origin. The antidumping-duty orders which ensued state in regard to the covered merchandise:

Based on the affirmative findings of the Department and the ITC, all unliquidated entries ..., as described in this notice, which were entered, or withdrawn from warehouse, for consumption on or after February 1, 1989, the date on which the Department published its preliminary affirmative antidumping duty determinations in the Federal Register, will be

liable for the possible assessment of anti-dumping duties.

54 Fed.Reg. at 25,314 and 25,315 (June 14, 1989). The affirmative determinations of the ITC, which was comprised of six members, are each annotated as follows:

[5] Chairman Brunsdale, Vice Chairman Cass, and Commissioner Lodwick dissenting.

[6] Commissioners Eckes and Newquist determine that an industry in the United States is materially injured by reason of the subject imports. Commissioner Rohr determines that an industry in the United States is threatened with material injury by reason of the subject imports. Commissioner Rohr further determines, pursuant to 19 U.S.C. 1673d(b)(4)(B), that he would not have found material injury but for the suspension of liquidation of entries of the merchandise under investigation.

54 Fed.Reg. at 24,431. Negative injury determinations were reached as to synchronous and other belts from Singapore, Commissioners Eckes and Newquist dissenting. *See id.*, n. 8.

■ The statutory subsection 1673d(b)(4)(B) referred to in note 6 provides:

If the final determination of the Commission is that there is no material injury but that there is threat of material injury, then its determination shall also include a finding as to whether material injury by reason of the imports of the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a) of this section would have been found but for any suspension of liquidation of entries of the merchandise.

The finding specified by this paragraph is required for imposition of duties under 19 U.S.C. § 1673e(b), to wit:

**(1) General rule**

If the Commission, in its final determination under section 1673d(b) of this title, finds material injury or threat of material injury which, but for the suspension of liquidation under section 1673b(d)(1) of this title would have led to a finding of material injury, then entries of the merchandise subject to the antidumping duty order, the liquidation of which has been suspended under section 1673b(d)(1) of this title, shall be subject to the imposition of antidumping duties under section 1673 of this title.

**(2) Special rule**

If the Commission, in its final determination under section 1673d(b) of this title, finds threat of material injury, other than threat of material injury described in paragraph (1), or material retardation of the establishment of an industry in the United States, then merchandise subject to an antidumping duty order which is entered, or withdrawn from warehouse, for consumption on or after the date of publication of notice of an affirmative determination of the Commission under section 1673d(b) of this title shall be subject to the assessment of antidumping duties under section 1673 of this title, and the administering authority shall release any bond or other security, and refund any cash deposit made, to secure the payment of antidumping duties with respect to entries of the merchandise entered, or withdrawn from warehouse, for consumption before that date.[1]

In other words, if the ITC determines that a domestic industry is materially injured, or would have been so injured but for suspension of liquidation, antidumping duties will

---

1. These rules were enacted to implement article 11 of the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade which "prohibits collection of antidumping duties on merchandise entered during the investigation unless the final determination is that there is a material injury or threat of material injury which, but for provisional measures, *e.g.*, suspension of liquidation during the investigation, would have been material injury."

S.Rep. No. 249, 96th Cong., 1st Sess. 77 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 463. *See also* Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade, April 12, 1979, art. 10, para. 1, 31 U.S.T. 4919, T.I.A.S. No. 9650, 1186 U.N.T.S. 204 ("Provisional measures shall not be applied unless the authorities concerned judge that they are necessary to prevent injury being caused during the period of investigation").

be imposed from the date of publication of an ITA preliminary determination in accordance with the general rule. If, however, the Commission determines that a domestic industry is threatened with material injury which would not amount to such injury itself in the absence of suspension of liquidation, those duties will be imposed only on entries after the date of a final ITC determination, and any antidumping-duty bonds or deposits required in accordance with an ITA preliminary affirmative determination are released.

■ As shown above, three members of the Commission drew negative conclusions as to the existence of any material injury caused by the entries at bar, two found otherwise, and one commissioner determined that threat existed but also that he would not have found material injury but for the suspension of liquidation. Under the law, those respective views added up to affirmative determinations of injury. *See* 19 U.S.C. § 1677(11), which provides:

**Affirmative determinations by divided Commission**

If the Commissioners voting ... are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination. For the purpose of applying this paragraph when the issue before the Commission is to determine whether there is—

(A) material injury to an industry in the United States,

(B) threat of material injury to such an industry, or

(C) material retardation of the establishment of an industry in the United States,

by reason of imports of the merchandise, an affirmative vote on any of the issues shall be treated as a vote that the determination should be affirmative.

*See generally Industrial Belts from Israel, Italy, Japan, Singapore, South Korea, Taiwan, the United Kingdom, and West Germany,* USITC Pub. 2194 (May 1989).

II

■ The plaintiffs proclaim that the aforesaid "voting pattern has never arisen since the statute was enacted in 1980" and that they thus present a "novel situation." Plaintiffs' Memoranda at 3. They emphasize that they

do *not* dispute the factual bases for the findings made below by the individual Commissioners which resulted in their votes. It is accepted ... that the Commissioners' findings were supported by evidence sufficient to justify the conclusions that they reached and are otherwise in accordance with law. Moreover, plaintiffs ... agree that the underlying voting pattern of the Commissioners properly constituted an affirmative determination by the ITC.

*Id.* at 4 (footnote omitted). Rather, plaintiffs' disagreement is with the ITA's response to the pattern of ITC views, which they reckon to be, for the purposes of section 1673e(b), the equivalent of two affirmative and four to the contrary in light of the negative but-for finding:

... Since Commissioner Rohr's crucial vote includes the finding required by statute as to the entries made during the preliminary suspension period, and that finding is that the entries should be released, the statute requires that they be released immediately and not included within the antidumping duty order for possible later assessment of antidumping duties.

*Id.* at 4–5.

Clearly, the plaintiffs raise solely an issue of law. Opposing counsel do not argue otherwise, hence defendant's passing criticism that the motions at bar should not have been styled as for summary judgment is not well-taken. They are properly presented, albeit restricted to the ITA record. In any event, the defendant and intervenor-defendant each cite *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), to the effect that agency interpretation of its governing statute should be upheld if reasonable, and each relies on *Metallverk-*

*en Nederland B.V. v. United States*, 13 CIT 1013, 728 F.Supp. 730 (1989), as controlling.

The latter case grew out of an affirmative determination by the ITC based on two commissioners' voting for material injury, one for threat and three negative votes. The threat vote, unlike the proceedings herein, entailed a finding that material injury would have occurred but for the suspension of liquidation—an affirmative but-for finding. The *Metallverken* plaintiffs took the position that equation of those individual views with an affirmative determination by the Commission under 19 U.S.C. § 1677(11) was unconstitutional or, in the alternative, a misapplication of the statute because the commissioners were not in fact evenly divided. The court disagreed on both points, but it did order remand upon "substantial doubt as to whether the [threat] determination was flawed by a mistake of fact." 13 CIT at 1014, 728 F.Supp. at 732. The mistake discovered was a reference to September 1987 as opposed to February 1988 as the date of suspension of liquidation. The plaintiffs argued that this error also undermined the concomitant, affirmative but-for finding. However, the court concluded the mistake in that context was "harmless". 13 CIT at 1037, 728 F.Supp. at 748.

The court recognized that, when an affirmative ITC determination consists of a combination of votes for material injury or threat coupled with affirmative but-for findings, the statute provides that antidumping duties are to be imposed as of the date of suspension of liquidation, which, of course, was the scenario before it. And the remand results confirmed that any mis-

apprehension of that date was indeed harmless. *See Metallverken Nederland B.V. v. United States*, 14 CIT ——, 744 F.Supp. 281, *appeal dismissed*, No. 90–1526 (Fed. Cir.1990). Nonetheless, in opining beforehand that the error was also harmless as a matter of law, the court had contended that the statute and the legislative history are

silent on how Commerce is to proceed under this scenario in the event of a negative "but for" finding. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 76–77 . . . . In such a case, Commerce's practice is to disregard the "but for" finding when less than a majority of the affirmative votes were based on a finding of threat of material injury, and to impose antidumping duties from the date of suspension of liquidation.

13 CIT at 1036–37, 728 F.Supp. at 747–48. But the statute, 19 U.S.C. § 1673e(b)(2), *supra*, states that, in the event of a negative but-for finding, the ITA

shall release any bond or other security, and refund any cash deposit made, to secure the payment of antidumping duties with respect to entries of the merchandise entered, or withdrawn from warehouse, for consumption before th[e] date [of publication of an affirmative ITC determination].

In support of the reference to agency "practice", the opinion cites the antidumping-duty orders now at issue herein, as well as orders *sub nom. Light–Walled Welded Rectangular Carbon Steel Tubing From Argentina*, 54 Fed.Reg. 22,794 (May 26, 1989), *Frozen Concentrated Orange Juice From Brazil*, 52 Fed.Reg. 16,426 (May 5, 1987), and *Certain Welded Carbon Steel Pipe and Tube Products from Turkey*.[2]

---

**2.** 51 Fed.Reg. 7,984 (March 7, 1986). The plaintiffs claim that a search for ITC determinations following enactment of the Trade Agreements Act of 1979 uncovered only four more with two affirmative votes and at least one no-injury vote. *See* Plaintiffs' Memoranda at 24 n. 10. A search by this court for additional split votes after issuance of *Light–Walled Rectangular Pipes and Tubes From Argentina*, USITC Pub. 2187 (May 1989), turned up one other determination. *Gray Portland Cement and Cement Clinker From Japan*, USITC Pub. 2376 (April 1991), involved two material-injury determinations, one threat with affirmative but-for finding, and one nega-

tive determination. This outcome was characterized by both the ITC and the ITA as one of material injury. *See Antidumping Duty Order and Amendment to Final Determination of Sales at Less Than Fair Value: Gray Portland Cement and Clinker From Japan*, 56 Fed.Reg. 21,658 (May 10, 1991).

The defendant cites, *inter alia, Certain Welded Carbon Steel Pipes and Tubes From India, Taiwan, and Turkey*, USITC Pub. 1839 (April 1986), in which the Commission determined that the domestic industry was materially injured or threatened with material injury by reason of

In *Light–Walled Rectangular Pipes and Tubes from Argentina,* 54 Fed.Reg. 22,635 (May 25, 1989), two ITC members found material injury, two voted for threat with negative but-for findings and two dissented, which array resulted in a determination that the domestic industry was "materially injured or threatened with material injury" by reason of the imports. In the ensuing antidumping-duty order, the ITA stated:

... Because the vote of the ITC was evenly divided between finding material injury and threat of material injury, the Department is treating this vote, for purposes of duty assessment, as an affirmative finding of material injury consistent with section 771(11) of the Act (19 U.S.C. 1677(11)).

54 Fed.Reg. at 22,794. The same result was reached without explanation in *Countervailing Duty Order; Certain Welded Carbon Steel Pipe and Tube Products from Turkey.*[3] *Frozen Concentrated Orange Juice From Brazil,* USITC Pub. 1970 (April 1987), on the other hand, consisted of one material-injury determination, two for threat with negative but-for findings, and two negative determinations. Duties were thus assessed in accordance with the special rule of 19 U.S.C. § 1673e(b)(2), *supra. See Antidumping Duty Order; Frozen Concentrated Orange Juice From Brazil,* 52 Fed.Reg. 16,426 (May 5, 1987).

The plaintiffs contend that such results can be explained by a count of all of the votes, as well as by a count of just those in the affirmative.[4] The ITA's interpretation, however, allegedly involved two steps:

In analyzing the final vote of the ITC, Commerce first determines whether the Commission as a whole has made an af-

imports from India and Turkey. In that proceeding, there were three material-injury determinations, one of threat with a negative but-for finding, and two negatives, whereupon the ITA characterized the outcome as material injury and applied the general rule. *See Antidumping Duty Order; Certain Welded Carbon Steel Standard Pipes and Tubes from India,* 51 Fed.Reg. 17,384 (May 12, 1986); *Antidumping Duty Order; Welded Carbon Steel Standard Pipe and Tube Products From Turkey,* 51 Fed.Reg. 17,784 (May 15, 1986). *Cf.* Defendant's Memoranda at 17 n. 16.

3. 51 Fed.Reg. 7,984 (March 7, 1986). The ITC had determined that an industry in the United States was materially injured or threatened with material injury by standard pipes and tubes from Turkey and Thailand based upon the following votes: two for material injury, two threat and two negative. *Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand,* USITC Pub. 1810 (Feb.1986). The Commission had also determined that other pipes and tubes from Turkey were threatening the domestic industry based on three affirmative votes with negative but-for findings and three negative determinations. And in *Antidumping Duty Order; Light–Walled Welded Rectangular Carbon Steel Tubing From Taiwan,* 54 Fed.Reg. 12,467 (March 27, 1989), the ITC's determination, characterized as material injury or threat by both the ITA and the Commission, was based on two material-injury determinations, two threat with negative but-for findings and two negative votes. *See Certain Light–Walled Rectangular Pipes and Tubes From Taiwan,* USITC Pub. 2169 (March 1989).

4. They refer the court to *Iron Construction Castings From Canada,* USITC Pub. 1811 (Feb.1986) (four material-injury determinations for heavy castings, one of threat with a negative but-for finding and one negative determination—reported by the ITC as material injury; and five threat determinations for light castings and one of material injury—reported as threat); *Iron Construction Castings From Brazil, India, and the People's Republic of China,* USITC Pub. 1838 (April 1986) (four material-injury determinations for heavy castings, one threat with a negative but-for finding, one negative determination—reported by the Commission as material injury; and two material-injury determinations for light castings and four of threat with negative but-for findings—reported as threat); and *Certain Cast–Iron Pipe Fittings from Brazil, the Republic of Korea, and Taiwan,* USITC Pub. 1845 (May 1986) (four material-injury determinations, one of threat with a negative but-for finding, and one negative determination—reported by the ITC as material injury).

In the antidumping-duty order for the Canadian castings, the ITA did not distinguish between heavy and light castings, characterized the ITC's determination as "material injury" and applied the general rule. *See* 51 Fed.Reg. 7,600 (March 5, 1986). In the proceedings covering castings from the other countries indicated, the ITA stated that, based upon the ITC's findings, it was applying the special rule as to light castings and the general rule as to heavy. *E.g., Antidumping Duty Order; Iron Construction Castings From Brazil,* 51 Fed.Reg. 17,220 (May 9, 1986). In *Antidumping Duty Order: Malleable Cast Iron Pipe Fittings from Brazil,* 51 Fed.Reg. 18,640 (May 21, 1986), the ITA, like the ITC, characterized the latter's determination as one of material injury and applied the general rule.

firmative or a negative determination. If Commerce determines that the Commission has made an affirmative determination, it then analyzes the affirmative votes of the Commissioners to determine the appropriate date for the imposition of antidumping duties.

Defendant's Memoranda at 15–16 (citation omitted). Further, in order to "determine the applicability of either the general or special rule, the statute directs Commerce to analyze the affirmative votes of material injury, threat of material injury with affirmative 'but for' determinations or threat of material injury coupled with negative 'but for' findings." *Id.* at 17.

If this was the approach, whether based on agency practice or not, the court is not persuaded that it led to the proper adherence to 19 U.S.C. § 1673e(b). To be sure, subsection (2) thereof does not refer to a "negative" determination; it refers to a "final determination" of the Commission. And, while the final determinations in these cases were affirmative under section 1677(11), if two of the three commissioners reporting negative views had considered the facts as constituting instead threats of material injury and then made negative but-for findings, as Commissioner Rohr did, the special rule of subsection (2) would have been applied. Yet, although those three actually reached outright negative conclusions, the dictate of section 1673e(b)(1) was apparently followed by the ITA—in the face of the fact that a majority of the ITC members had found that the domestic industry was not being materially injured, and would not have been during the time in question in the absence of provisional relief. Inherent in such negative views is the realization that antidumping duties will not be imposed, just as affirmative views can signify imposition of such duties from the date of a preliminary less-than-fair-value determination rather than from the date of a final decision on material injury.

The Court of Appeals for the Federal Circuit has stated that "due weight" must be given to the "agency's interpretation of the statute it administers, and we accept that interpretation if it is 'sufficiently rea-

sonable.'" *Ipsco, Inc. v. United States,* 899 F.2d 1192, 1194–95 (Fed.Cir.1990) (citations omitted). On the other hand, a court may not sustain an exercise of administrative discretion which distorts statutory purpose and meaning. *Id.*

In these cases, that purpose and meaning are clear enough to render imposition of duties from the date of the ITA's preliminary determination of sales at less than fair value a distortion and not sufficiently reasonable. *See* Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade, April 12, 1979, arts. 10, 11 and S.Rep. No. 249, 96th Cong., 1st Sess., *supra* note 1. Hence, the court is constrained to conclude that the provisions of the antidumping-duty orders challenged by the plaintiffs were not in accordance with law, and their motions for summary judgment must therefore be granted.

