# United States Court of Appeals for the Federal Circuit

---

**WIND TOWER TRADE COALITION,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**CS WIND CHINA CO., LTD., CS WIND CORPORATION, AND TITAN WIND ENERGY (SUZHOU) CO., LTD.,**
*Defendants-Appellees,*

AND

**CHENGXI SHIPYARD CO., LTD.,**
*Defendant-Appellee,*

AND

**SIEMENS ENERGY, INC.,**
*Defendant-Appellee.*

---

2013-1303

---

Appeal from the United States Court of International Trade in Nos. 13-CV-0080, 13-CV-0081, and 13-CV-0082, Judge Leo M. Gordon.

——————————————

Decided: January 24, 2014

——————————————

ROBERT E. DEFRANCESCO, III, Wiley Rein, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were ALAN H. PRICE, DANIEL B. PICKARD, and USHA NEELAKANTAN.

JOSHUA E. KURLAND, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief was DANIEL J. CALHOUN, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

NED H. MARSHAK, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, of New York, New York, argued for defendants-appellees, CS Wind China Co., Ltd., et al. With him on the brief were BRUCE M. MITCHELL, MAX F. SCHUTZMAN, ANDREW B. SCHROTH, and KAVITA MOHAN. Of counsel was ANDREW THOMAS SCHUTZ, of Washington, DC.

ELLIOT J. FELDMAN, Baker Hostetler, LLP, of Washington, DC, argued for defendant-appellee, Siemens Energy, Inc. With him on the brief was MICHAEL S. SNARR.

MARK DAVID DAVIS, Davis & LEiman, PC, of Washington, DC, for defendant-appellee Chengxi Shipyard Co., Ltd.

——————————————

Before NEWMAN, MOORE, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

The Wind Tower Trade Coalition ("Appellant" or the "Coalition"), a group of domestic manufacturers of utility scale wind towers, appeals the decision of the United States Court of International Trade ("CIT") denying its motions for preliminary injunctions. *See Wind Tower Trade Coal. v. United States,* 904 F. Supp. 2d 1349 (Ct. Int'l Trade 2013). This court affirms.

BACKGROUND

After receiving petitions filed by the Coalition, the United States Department of Commerce ("Commerce") initiated antidumping and countervailing duty investigations covering utility scale wind towers ("subject merchandise") from the People's Republic of China ("China") and an antidumping investigation covering subject merchandise from the Socialist Republic of Vietnam ("Vietnam"). The antidumping and countervailing duty statutes[1] require Commerce and the United States International Trade Commission ("ITC") to conduct parallel investigations to determine whether the application of one or both of these remedial duties is

---

[1] The antidumping statute governs the application of remedial duties to foreign goods sold, or likely to be sold, in the United States "at less than fair value," 19 U.S.C. § 1673 (pertaining to the "imposition of antidumping duties"), while the countervailing duty statute governs the application of remedial duties to subsidized imports, 19 U.S.C. § 1671 (pertaining to the "imposition of countervailing duties"). These sections contain parallel provisions and much of the governing language is identical.

warranted. 19 U.S.C. §§ 1671a–1671d, 1673a–1673d (2006).

Pursuant to 19 U.S.C. §§ 1671b(a) and 1673b(a), the ITC issued a preliminary injury determination that there was a reasonable indication of threat of material injury to a domestic industry by reason of imports of subject merchandise from China and Vietnam. Commerce then issued a preliminary affirmative countervailing duty determination with respect to imports of subject merchandise from China and preliminary affirmative antidumping duty determinations with respect to imports of subject merchandise from China and Vietnam. Based on these determinations, and pursuant to the "provisional measures" requirements of 19 U.S.C. §§ 1671b(d) and 1673b(d), Commerce instructed the United States Customs and Border Protection ("Customs") to suspend liquidation of all entries of subject merchandise that were entered or withdrawn from warehouse for consumption on or after the dates of Commerce's preliminary antidumping and countervailing duty determinations. The instructions also required cash deposits for the entries based on the preliminary duty margins Commerce calculated in its preliminary determinations.

Commerce then made final affirmative determinations, after which the ITC issued its final affirmative determination in an evenly-divided vote (i.e., three negative votes and three affirmative votes). Utility Scale Wind Towers from China and Vietnam, 78 Fed. Reg. 10,210, 10,210 n.2 (ITC Feb. 13, 2013) (final injury determination) ("ITC Determination"). Under the "divided vote" provision of 19 U.S.C. § 1677(11), the ITC's split vote constituted an affirmative determination. 19 U.S.C. § 1677(11) ("If the Commissioners voting on a determination by the [ITC] . . . are evenly divided as to whether the determination should be affirmative or negative, the [ITC] shall be deemed to have made an affirmative determination."). However, of the six

Commissioners on the investigation panel, three Commissioners voted entirely in the negative, finding neither material injury nor threat of injury, two determined that the domestic wind tower industry had suffered present material injury, and a third determined that the domestic industry was threatened with material injury, but that the domestic industry would not have suffered material injury in the absence of the provisional measures. ITC Determination at 10,210 n.2–3.

Commerce then issued antidumping and countervailing duty orders implementing the results of the final affirmative determinations. Utility Scale Wind Towers from China, 78 Fed. Reg. 11,146 (Dep't of Commerce Feb. 15, 2013) (antidumping duty order); Utility Scale Wind Towers from China, 78 Fed. Reg. 11,152 (Dep't of Commerce Feb. 15, 2013) (countervailing duty order); Utility Scale Wind Towers from Vietnam, 78 Fed. Reg. 11,150 (Dep't of Commerce Feb. 15, 2013) (antidumping duty order) (collectively, the "Orders"). As to the effective dates of the Orders, Commerce applied the so-called "Special Rule" of 19 U.S.C. §§ 1671e(b)(2) and 1673e(b)(2), making the Orders effective prospectively from the publication date of the ITC Determination. The Orders also indicated that Commerce would instruct Customs to terminate the suspension of liquidation and refund the cash deposits made prior to the publication date of the ITC Determination.

Appellant challenged Commerce's application of the Special Rule before the CIT and sought temporary restraining orders ("TRO") and preliminary injunctions to: (1) enjoin Commerce from ordering the termination of the suspension of liquidation and the refund of cash deposits; and (2) enjoin Customs during the pendency of the litigation before the CIT, including any subsequent remands and appeals, from discontinuing the suspension of liquidation and refunding the cash deposits. *Wind Tower Trade Coal.*, 904 F. Supp. 2d at 1351. The CIT

initially denied Appellant's applications because it found Appellant had not made an adequate showing of likelihood of success on the merits. *Id.* Appellant submitted a supplemental response further explaining its position on its likelihood of success. The CIT then entered TROs to provide the Appellees an opportunity to respond to Appellant's motions.

After receiving Appellees' responses, the CIT denied Appellant's motions for preliminary injunctions and dissolved the TROs. *Id.* Appellant filed a timely appeal to this court. Upon Appellant's motion to stay pending appeal, this court reinstated the TROs pending full consideration of the issues. *Wind Tower Trade Coal. v. United States,* No. 13-1303 (Fed. Cir. June 28, 2013) (ECF No. 52) (order granting motion for emergency stay pending appeal).

DISCUSSION

I. Jurisdiction

Of the Appellees, Siemens Energy, Inc. ("Siemens") alone challenges this court's jurisdiction: "[The Coalition's] interlocutory appeal of the CIT's order, and its case as a whole, *may* be dismissed for lack of subject matter jurisdiction, lack of standing, and lack of appellate jurisdiction." Appellee Siemens's Br. 4 (emphasis added). Siemens bases its challenge on 28 U.S.C. § 1292(d)(1), which provides

> when any judge of the [CIT], in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, [this court] *may, in its discretion,* permit an appeal to be taken from such order

(emphasis added).  Siemens contends this appeal does not meet these criteria.  Siemens also acknowledges, however, that "[t]his Court previously has assumed jurisdiction over appeals of interlocutory orders pertaining to injunctions from the CIT, relying on § 1292(c)."  Appellee Siemens's Br. 7.

In *American Signature, Inc. v. United States*, 598 F.3d 816, 823 (Fed. Cir. 2010), for example, this court exercised jurisdiction over a case in which the CIT denied a motion for a preliminary injunction.  This court expressly stated that jurisdiction was proper under § 1292(c)(1), which provides that this court "shall have exclusive jurisdiction . . . of an appeal from an interlocutory order or decree described in subsection (a) . . . in any case over which the court would have jurisdiction of an appeal under section 1295 of this title."  Section 1295(a)(5) provides that this court has exclusive jurisdiction "of an appeal from a final decision of the [CIT]."  Section 1292(a), however, specifies that

> the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.

Because this subsection does not specify the CIT, Siemens argues that only those appeals from interlocutory orders that meet the criteria of § 1292(d)(1), the subsection that specifically references the CIT, can be heard by this court.

Contrary to Siemens's arguments, this court has held that §§ 1292(a), 1292(c)(1), and 1295 in conjunction confer jurisdiction upon this court over appeals of interlocutory orders issued by the CIT "granting, continuing, modifying,

refusing or dissolving" injunctions. 28 U.S.C. § 1292(a); *see, e.g.*, *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) (stating, in an appeal from the CIT, "[p]ursuant to 28 U.S.C. § 1292(c)(1) . . . , this court has jurisdiction over an appeal from interlocutory orders described in section 1292(a), which include orders granting injunctive relief"). Under our precedent, this court has jurisdiction under 28 U.S.C. § 1292(c)(1).

## II. Standard of Review

"The governing standard of review on appeal of a grant or denial of a preliminary injunction is abuse of discretion." *Am. Signature*, 598 F.3d at 823 (citing *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009)). "An abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009) (internal citation and quotation marks omitted). To the extent a court's decision to grant or deny a preliminary injunction "hinges on questions of law," this court's review is de novo. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

## III. Legal Framework

### A. Standard for Preliminary Injunctions

"A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). As observed by the CIT, "[i]n antidumping and

countervailing duty cases preliminary injunctions against liquidation have become almost automatic due to the retrospective nature of U.S. trade remedies, the length of the judicial review process, and the cruciality of unliquidated entries for judicial review." *Wind Tower Trade Coal.,* 904 F. Supp. 2d at 1352 (citing 19 C.F.R. § 351.212(a) (2012); *Zenith Radio Corp. v. United States,* 710 F.2d 806, 810 (Fed. Cir. 1983); *SKF USA, Inc. v. United States,* 512 F.3d 1326, 1329 (Fed. Cir. 2008) ("The *Zenith* rule renders a court action moot once liquidation occurs."); *Qingdao Taifa,* 581 F.3d at 1381–82).

However, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter,* 555 U.S. at 24 (citing *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008)); *see also Qingdao Taifa,* 581 F.3d at 1382 (noting the Supreme Court's "emphasis on the importance of the likelihood of success in the preliminary injunction calculus" in *Munaf,* 553 U.S. at 689–90). Therefore, "even if a party establishes that it will be irreparably harmed, the party must also demonstrate that it has at least a fair chance of success on the merits for a preliminary injunction to be appropriate." *Qingdao Taifa,* 581 F.3d at 1381 (internal quotation marks and citation omitted).

## B. ITC Injury Determinations

In parallel investigations, Commerce investigates the extent to which foreign imports are "dumped" (i.e., sold or likely to be sold in the United States "at less than fair value") or subsidized by a foreign government, while the ITC investigates whether the U.S. domestic industry has been materially injured, or threatened with material injury, as a result of the foreign imports. 19 U.S.C. §§ 1671a–1671d, 1673a–1673d. If both Commerce and the ITC make *preliminary* affirmative determinations, provisional measures take effect, which suspend liquidation and require cash deposits for entries of merchandise covered by the investigation. *Id.* §§ 1671b(d),

1673b(d). If Commerce and the ITC then make affirmative *final* determinations at the conclusion of their respective investigations, the statute directs Commerce to publish antidumping and/or countervailing duty orders. *Id.* §§ 1671e(a), 1673e(a). In such orders, Commerce specifies the effective date of the orders—either the duty orders apply retrospectively to the entries that were suspended, or the orders apply prospectively from the date of publication of the final ITC determination.

Pursuant to 19 U.S.C. §§ 1671e(b) and 1673e(b),[2] the effective date depends on the nature of the ITC determination, which will lead to the application of either the "General Rule" or the "Special Rule" (collectively, "the Rules"). The Rules are as follows:

(1) General rule

---

[2] The enactment of the Trade Agreements Act of 1979 (codified at 19 U.S.C. §§ 1671e(b) and 1673e(b)) implemented the provisions of two international trade agreements the United States entered into as part of the Tokyo Round of Multilateral Trade Negotiations. According to the Trade Agreements Act's legislative history, these provisions prohibit the collection of duties during the provisional-measures period "unless the final determination is that there is material injury or threat of material injury which, but for provisional measures, e.g., suspension of liquidation, during the investigation, would have been material injury." S. Rep. No. 96-249, at 59, 77 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 445, 463. These agreements recognize that, without a finding of material injury or threat with an affirmative "but for" finding, there is no affirmative injury determination to support the imposition of duties during the provisional-measures period.

> If the [ITC], in its final determination . . . finds material injury or threat of material injury which, but for the suspension of liquidation . . . would have led to a finding of material injury, then entries of the [subject merchandise], the liquidation of which has been suspended . . . , shall be subject to the imposition of . . . duties . . . .

> (2) Special rule

> If the [ITC], in its final determination . . . finds threat of material injury, other than threat of material injury described in paragraph (1), . . . then [subject merchandise] which is entered, or withdrawn from warehouse, for consumption on or after the date of publication of notice of an affirmative determination of the [ITC] . . . shall be subject to the [assessment or imposition] of . . . duties . . . , and [Customs] shall release any bond or other security, and refund any cash deposit made.

*Id.* §§ 1671e(b), 1673e(b) (providing parallel rules for countervailing and antidumping duties, respectively). In other words, the General Rule applies if the ITC makes (1) an affirmative finding of present material injury, or (2) a finding of a threat of material injury that would have been a finding of present material injury in the absence of the provisional measures (i.e., a finding that "but for" the suspension of liquidation, the ITC would have concluded that the domestic industry is materially injured). *Id.* Under this Rule, duties are collected retrospectively on subject merchandise that entered the United States during the course of the investigation. On the other hand, the Special Rule applies if the ITC finds that the U.S. industry is threatened with material injury, but there would *not* be present material injury in the absence of the provisional measures. *Id.* Under this rule, Commerce's orders are effective prospectively from the publication

date of the ITC's final determination and provisional cash deposits are refunded.

The statutes do not explicitly address which of the Rules applies to the fragmented ITC voting pattern presented in this case (i.e., an evenly-divided affirmative determination comprising three negative votes and three affirmative votes, with two commissioners voting for material injury and one voting for threat with a negative "but for" finding). The CIT, however, addressed this voting pattern in *MBL (USA) Corp. v. United States*, 787 F. Supp. 202 (Ct. Int'l Trade 1992), where Commerce applied the General Rule based on its interpretation of 19 U.S.C. § 1673e(b). The CIT reviewed Commerce's interpretation of § 1673e(b) under the second prong of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984), and determined that the interpretation was unreasonable because Commerce was effectively ignoring the three negative votes, and focusing only on the three affirmative votes. *MBL*, 787 F. Supp. at 207–08. The CIT found it unreasonable that two votes for and four votes against material injury during the provisional-measures period could justify retroactive application of the duties. Therefore, the CIT reversed Commerce's determination, holding that the Special Rule applies to this particular voting pattern.

Here, expressly noting the holding of *MBL*, Commerce applied the Special Rule, making the Orders effective prospectively. Because the CIT did not find that Appellant's challenge based on Commerce's application of the Special Rule was likely to succeed on the merits, it denied the Coalition's motions for preliminary injunctions. Appellant argues that the CIT erred in this regard.

IV. Likelihood of Success of the Merits

In response to Appellant's contention that Commerce erred in applying the Special Rule, the CIT stated that it was "persuaded that this issue is just not winnable." *Wind Tower Trade Coal.*, 904 F. Supp. 2d at 1356. When a court examines the lawfulness of Commerce's statutory interpretations, it employs the two-prong test established in *Chevron.* 467 U.S. at 842–45. The court first examines "whether Congress has directly spoken to the precise question at issue," and if so, the agency and the court must comply with Congress's clear intent. *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," a prong-two analysis is warranted, under which the court must determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "To determine whether Commerce's interpretation is reasonable, the court 'may look to the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the antidumping scheme as a whole.'" *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1361 (Fed. Cir. 2007) (quoting *NSK Ltd. v. United States*, 217 F. Supp. 2d 1291, 1297 (Ct. Int'l Trade 2002)).

Relying on *Chevron*, the CIT found, "[b]eginning from the premise that Congress did not address the specific ITC voting pattern presented here, it is not difficult to sustain Commerce's interpretation of sections 1671e(b) and 1673e(b) as a reasonable construction of the statute to which the court must defer." *Wind Tower Coal.*, 904 F. Supp. 2d at 1356. The CIT properly held it was reasonable for Commerce to consider all of the ITC Commissioners' votes—not just the affirmative votes—under the second prong of *Chevron*.

Appellant argues that the CIT should not have moved beyond *Chevron*'s first prong because the plain language of the statute is clear that the General Rule applies to the

voting pattern at issue.  To Appellant, as "the text of the statute makes clear, the Special Rule is only applicable when the ITC makes a final determination of threat of material injury."  Appellant's Br. 17–18; *id.* at 19–20 ("[T]he Special Rule is not applicable in circumstances where only one Commissioner has made an affirmative finding of threat of material injury with a corresponding 'but for' determination and the statute does not support attributing negative 'but for' determinations to Commissioners who made overall negative findings.").  As noted, however, the plain language of the statute does not address the voting pattern at issue here.  *See* 19 U.S.C. §§ 1671e(b), 1673e(b).  Because "the statute is silent . . . with respect to the specific issue," a prong-two analysis is warranted.  *Chevron,* 467 U.S. at 843.

In the alternative, Appellant argues that, to the extent the statute is unclear, Commerce's application of the Special Rule is not a reasonable interpretation of the statute and is not entitled to deference.  First, Appellant argues that Commerce's application of the Special Rule is unreasonable because it renders the affirmative threat determination of a single Commissioner the controlling vote of the entire ITC.  To Appellant, the statute "clearly indicates that Congress did not intend for the Special Rule to be applied when a majority of the Commissioners who votes in the affirmative found that a U.S. industry is materially injured by reason of subject imports."  Appellant's Br. 27–28.  In support, Appellant relies on the "divided vote" provision of 19 U.S.C. § 1677(11) ("If the Commissioners voting on a determination by the [ITC] . . . are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination.").  "Based on this explicit statutory directive," Appellant argues, "there is no doubt that under such split vote circumstances, Congress intended for duties to be assessed on the subject merchandise."  Appellant's Br. 34.

The Coalition's argument is unpersuasive because it ignores the votes of three of the six Commissioners, relying solely on the three votes for affirmative material injury or threat thereof. Such an interpretation of the statute, one that ignores that only two of the six Commissioners found present material injury and no Commissioner made an affirmative "but for" determination, is not reasonable. Indeed, the statutory language of the Rules requires that the ITC as a whole makes a finding when determining which of the Rules applies. 19 U.S.C. § 1671e(b)(1) ("*If the Commission*, in its final determination . . . finds material injury or threat of material injury . . . .") (emphasis added); *id.* § 1671e(b)(2) (same); *id.* § 1673e(b)(1) (same); *id.* § 1673e(b)(2) (same). "The [ITC] makes its determinations by tallying the votes of the six individual commissioners." *U.S. Steel Grp. v. United States,* 96 F.3d 1352, 1360 (Fed. Cir. 1996). Ignoring half of the votes of the six Commissioners does not reflect a determination of "the Commission." Occasionally, even in the law, common sense must prevail.

In any case, the legislative history of the statute explicitly states that Congress, in conformity with the United States' international agreements, intended to ensure that Commerce does not impose duties on merchandise that enters during the provisional-measures period "unless the final determination is that there is material injury or threat of material injury which, but for provisional measures, e.g., suspension of liquidation, during the investigation, would have been material injury." *See* S. Rep. No. 96-249, at 59, 77 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381 at 445, 463. This purpose is flouted when two-thirds of the ITC's votes are disregarded.

The Coalition also argues the word "finds" in the statutes unambiguously requires Commerce to consider only votes that contain actual declarations on the issue

identified in the Rules.  Appellant's Br. 28 ("As becomes clear from the text of the statute, the relevant issue here is the meaning of the term 'finds.'").  Because the word "finds" is not defined in the Tariff Act, Appellant asserts it should be defined to mean that only votes of the three Commissioners who found affirmative material injury or threat thereof should be considered for purposes of the Special Rule: "Based on these votes, and these votes alone, the only logical conclusion is that the affirmative material injury votes outweigh the affirmative threat of material injury vote, warranting application of the General Rule." Appellant's Br. 31.

Appellee the United States has exposed the logical fallacy of this argument:

> If anything . . . [the Coalition's] position constitutes an unreasonable interpretation of the statute's plain language, because one can hardly construe the ITC to have "found" material injury when four of six commissioners explicitly rejected that finding, whereas the ITC's vote breakdown entails at least a finding of threat of injury. Indeed, Commerce in *MBL* espoused the interpretation that [the Coalition] now asserts, thereby ignoring the votes of half of the ITC commissioners, and the [CIT] held the interpretation to be unreasonable.

Appellee United States' Br. 22 (citing *MBL*, 787 F. Supp. at 208).  There is no support for the proposition that the word "finds" in §§ 1671e(b) and 1673e(b) prevents Commerce from considering all of the ITC votes when determining whether the General or the Special Rule applies.

Finally, Appellant challenges Commerce's reliance on *MBL*, and insists that the rule from an earlier CIT case, *Metallverken Nederland B.V. v. United States*, 728 F. Supp. 730 (Ct. Int'l Trade 1989), should be applied.  While

*MBL* involved a voting pattern identical to that at issue here, *Metallverken* involved a different pattern. To the Coalition, however, reliance on *Metallverken* is warranted as *MBL's* "holding is flawed because it inappropriately attributes affirmative threat findings and negative 'but for' findings to three Commissioners who did not make such determinations." Appellant's Br. 31.

Appellant's argument fails for several reasons.[3] As an initial matter, *MBL* is the only case addressing the ITC voting pattern presented here. Second, the language from *Metallverken* suggesting that the voting pattern in this case may lead to the application of the General Rule is dicta, as was recognized by the CIT in *MBL*. *See MBL*, 787 F. Supp. at 206 (recognizing that *Metallverken* "grew out of an affirmative determination by the ITC" in which the Commissioner voting for threat of injury made an affirmative "but for" finding); *see also Wind Tower Coal.*, 904 F. Supp. 2d at 1357 ("*Metallverken* . . . did not involve the same ITC voting pattern, nor did it involve Commerce's interpretation of an ITC final determination, as Commerce was not a party to the action."). Third, in *MBL* itself the CIT undertook an extensive examination of the *Metallverken* decision and found it to be of limited persuasive weight on the question of the proper treatment of provisional measures. *See MBL*, 787 F. Supp. at 206.

In sum, this court agrees with the CIT's well-reasoned conclusion that "Commerce's application of the special rule to the fragmented ITC voting pattern here . . . flows reasonably from the specific statutory provisions, their purposes, and the statute as a whole, as the court

---

[3]    Because this court finds Appellant's arguments regarding *Metallverken* unavailing, its additional arguments based on examples of Commerce's "practice" cited in *Metallverken* are also unpersuasive.

explained in *MBL.*"  *Wind Tower Trade Coal.*, 904 F. Supp. 2d at 1356.  Appellant has not undermined this conclusion, and therefore has not demonstrated its likelihood of success on the merits of its challenge to Commerce's application of the Special Rule.

## V. Irreparable Injury

Regarding the second preliminary injunction factor, the CIT observed that "parties tend to establish irreparable injury fairly easily in trade cases because of the negative consequences of liquidation.  Here, the court [below] believes that [the Coalition] has established such injury because once the entries covered by the provisional measures are liquidated, the court cannot provide any meaningful relief." *Wind Tower Trade Coal.*, 904 F. Supp. 2d at 1358.  No party has challenged this aspect of the decision.  The court notes, however, that a showing on one preliminary injunction factor does not warrant injunctive relief in light of a weak showing on other factors.  *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)) ("[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). The CIT did not abuse its discretion in holding that the Coalition's showing of irreparable injury is outweighed by its failure to demonstrate any likelihood of success on the merits.

## VI. Balance of the Equities

Based on its finding that there was little likelihood of success on the merits of Appellant's challenge, the CIT expressed its concern "that issuance of preliminary injunctions against liquidation here may be a misuse of the court's equitable power by keeping the provisional measures in place beyond their prescribed 4-month period [under 19 U.S.C. §§ 1671b(d), 1673b(d)] and by depriving importers of the time value of their provisional cash deposits."  *Wind Tower Trade Coal.*, 904 F. Supp. 2d at

1358–59.  For these reasons, the CIT properly found that the equities did not favor Appellant.

The Coalition, however, insists that the balance tips in its favor because it will be irreparably injured in the absence of preliminary injunctions, while the United States will suffer no hardship.  Appellant is mistaken. First, it is notable that the Coalition will not suffer concrete financial hardship in the absence of injunctions because its members are not liable for paying duties and have no right to recover any duties.  Second, even if the suspended entries are liquidated without assessment of retrospective duties, the Coalition is protected by the prospective assessment of duties under the Orders.  In addition, the Coalition will be able to obtain future administrative and judicial review of the calculations of such duties on any injurious post-Order entries.

Third, the United States has a cognizable interest in administrating the trade laws in a fair, timely, and effective manner.  Under 19 U.S.C. §§ 1671b(d) and 1673b(d), provisional measures take effect when Commerce issues a preliminary affirmative determination and generally "may not remain in effect for more than 4 months."  An injunction postponing liquidation for the pendency of the litigation would necessarily prolong the provisional measures well beyond their statutory limit. The CIT did not abuse its discretion in finding that, in light of the weak showing of a likelihood of success on the merits, the balance did not tip in Appellant's favor.  *See Winter*, 555 U.S. at 23 ("[E]ven if plaintiffs have shown irreparable injury . . . , any such injury is outweighed by the public interest and the [balance of the equities].").

## VII. Public Interest

Finally, the CIT did not believe "it is in the public interest to issue preliminary injunctions in actions where there is no likelihood of success on the merits."  *Wind Tower Trade Coal.*, 904 F. Supp. 2d at 1359.  Appellant

contends, however, that "the public interest favors the grant of preliminary injunctions, and the CIT, based largely on its erroneous determination that the Coalition failed to establish a likelihood of success on the merits, abused its discretion in finding otherwise." Appellant's Br. 51.

It was not an abuse of discretion for the CIT to find, given the unlikelihood of the Coalition's success on the merits, that granting the preliminary injunctions would not be in the public interest. Indeed, "'[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some *extraordinary injury* or *strong public interest* is also shown.") (emphases added). Here, no strong public interest was demonstrated.

CONCLUSION

For the foregoing reasons, the CIT's decision denying Appellant's motions for preliminary injunctions and dissolving the TROs is affirmed.

**AFFIRMED**