WALLACH, Circuit Judge,
concurring in part.
I concur in the result that the majority reaches, but write separately to ensure that what we say (or do not say) today is not misconstrued.
It is important to highlight certain relevant facts. On January 24, 2012, following petitions filed by the Wind Tower Trade Coalition (“Coalition”), the United States Department of Commerce (“Commerce”) initiated the subject investigations. In February 2012, the United States International Trade Commission (“ITC” or “Commission”) issued a unanimous affirmative preliminary injury determination, finding that “there is a reasonable indication that an industry in the United States is threatened with material injury by reason of’ the subject imports. Utility Scale Wind Towers from China and Vietnam, 77 Fed.Reg. 9700, 9700 (ITC Feb. 17, 2012) (preliminary determination).
With Commerce having issued a final determination that the subject merchandise was sold in the United States at less than fair value and that such merchandise also benefitted from eountervailable subsidies, the ITC made an affirmative final injury determination. Two Commissioners found material injury; four did not; one found threat of material injury;[1] and three found that there was no threat of such injury.
The majority’s conclusion implicitly rejects, without discussion, several arguments that Appellant Siemens Energy, Inc. (“Siemens”) unsuccessfully raised before the United States Court of International Trade (“CIT”) and that it again raises on appeal. They are addressed below. Moreover, the majority concludes its opinion with a brief discussion of our recent holding in Wind Tower Trade Coalition v. United States, 741 F.3d 89 (Fed.Cir.2014). I decline to join that aspect of the majority decision for the reasons provided below. I discuss each in turn.
I. The CIT Correctly Applied the Standard of Review
Siemens contests the ITC’s decision to combine the vote for threat of material injury with the two votes for material injury to reach a final affirmative injury determination. I agree with the majority that the unambiguous terms of the statute support the ITC’s interpretation.[2] See 19 *1374 U.S.C. § 1677(11) (2012) (explaining that, in the context of an evenly divided vote, “an affirmative vote on [material injury, threat of material injury, or material retardation of the establishment of an injury] shall be treated as a vote that the determination should be affirmative”).
When an affirmative Commission determination becomes subject to judicial review, sections 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i), and (b)(l)(B)(i) of Title 19 of the United States Code state that such determination is reviewed under the substantial evidence standard. Siemens argues that “the CIT misapplied the standard of review, treating affirmative-voting Commissioners in the minority as majorities.” Appellant’s Br. 42 (capitalization omitted). According to Siemens, this misapplication meant that the CIT unreasonably gave “deference to factual findings rejected by a clear majority of the Commission.” Id. at 47 (capitalization omitted). Siemens cites Wind Tower Trade Coalition in support of its argument. Id. at 46.
That record evidence contradicts the ITC’s conclusion does not mean that it misapplied the standard of review. Under the substantial evidence standard of review, we must affirm reasonable determinations “even if it is possible to draw two inconsistent conclusions from the evidence.” Fleming v. Escort Inc., 774 F.3d 1371, 1375 (Fed.Cir.2014) (internal quotation marks and citation omitted). Siemens states that “[i]t is self-evident from the nature of the proceedings before the Commission why judicial deference should be a function of the common factual views rather than the nature of the Commissioner’s vote,” Appellant’s Br. 47, but that argument asks us to do what we cannot— reweigh facts already considered by the Commission. See Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed.Cir.1984).
Finally, Siemens misconstrues our holding in Wind Tower Trade Coalition. In that decision, this court applied Chevron to defer to Commerce’s permissible interpretation of two ambiguous statutory provisions — neither of which is at issue in this case — to determine when antidumping and countervailing duties become effective. Wind Tower Trade Coal., 741 F.3d at 96-100 (interpreting 19 U.S.C. §§ 1671e(a) and 1673e(a)). We affirmed Commerce’s interpretation that, under 19 U.S.C. §§ 1671e(a) and 1673e(a), it would not make sense in that particular context to apply § 1677(11) to combine votes of “material injury,” “threat of material injury,” and “material retardation.” Id. In that case, we did not address — as in this case— whether the Commission properly followed the unambiguous terms of § 1677(11) in issuing an affirmative final injury determination. Id.
II. Substantial Evidence Supports the Material Injury and Threat of Mate- ' rial Injury Determinations
I agree with the majority that substantial evidence supports the ITC’s material injury and threat of material injury findings. With respect to the threat of material injury determination, Commissioner Pinkert’s “downward pricing trend” finding was not wholly based on import price, but also on the falling gap in delivered *1375 costs for projects, suggesting increased competition between subject imports and the domestic like product and downward pressure on prices. Utility Scale Wind Towers from China and Vietnam, Inv. Nos. 701-TA-486 and 731-TA-1195-1196, USITC Pub. 4372 at 34-35, 2013 WL 1155424 (Feb.2013) (Final). He did not find, as Siemens claims, that subject import prices were falling. Id.
Siemens also contends that Commissioner Pinkert erroneously cited projects that occurred outside the period of investigation (“POI”) and, thus, that those projects “had no bearing on the end-of-POI ‘trend’ he postulated.” Appellant’s Br. 28 (citation omitted). However, a Commissioner may infer a trend in the “imminent future” by “examining the ‘trend’ evidenced by the yearly data.” Asociacion de Productores de Salmon y Trucha de Chile AG v. U.S. Int’l Trade Comm’n, 26 Ct. Int’l Trade 29, 38, 180 F.Supp.2d 1360, 1370 (2002) (citing Bando Chem. Indus., Ltd. v. United States, 17 Ct. Int’l Trade 798, 807, 1993 WL 327837 (1993), aff'd, 26 F.3d 139 (Fed.Cir.1994) (unpublished)).
Finally, Siemens argues that higher-priced subject imports are inconsistent with adverse effects, Appellant’s Br. 27, but that argument does not consider the convergence of domestic and import prices. It was reasonable for Commissioner Pin-kert to infer from converging prices that competition was increasing between domestic products and subject imports.
III. Argument Not Raised that the Majority Addresses
At the end of the opinion, the majority discusses our recent decision in Wind Tower Trade Coalition, which addressed when antidumping and countervailing duties become effective under 19 U.S.C. §§ 1671e(a) and 1673e(a). See 741 F.3d at 96-100. I decline to join this portion of the decision.
The majority suggests that the Coalition contests that decision in this appeal. However, no portion of the Coalition’s response brief suggests that it does. See generally Coalition’s Br. Moreover, we could not review such a claim at this stage absent both (1) a properly filed cross-appeal of the underlying CIT decision by the Coalition, see Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361, 1365 (Fed.Cir.2000) (“The general rule is that, without taking a cross-appeal, the prevailing party may present any argument that supports the judgment in its favor, except where the result of acceptance of its argument would be a reversal or modification of the judgment rather than an affir-mance.” (internal quotation marks and citation omitted)),[3] and (2) a request from the Coalition to reconsider Wind Tower Trade Coalition en banc due to its prece-dential status, Deckers Corp. v. United States, 752 F.3d 949, 965 (Fed.Cir.2014) (explaining that panels do not have the authority to overrule prior precedential panel decisions unless the en banc court or the Supreme Court overturns the prior decision).
Siemens briefly discusses our duty effective date holding in Wind Tower Trade Coalition in the background section of its opening brief. Appellant’s Br. 18-20. *1376 Even assuming that we construed that discussion to be an argument, our precedent would require us to consider it waived for at least two reasons. See In re Baxter Int'l, Inc., 678 F.3d 1357, 1362 (Fed.Cir.2012) (holding that a party waives an argument that it raises in the background section of its brief, but not in the argument section); see also SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed.Cir.2006) (stating that when “a party includes no developed argumentation on a point ... we treat the argument as waived” (quoting Anderson v. City of Boston, 375 F.3d 71, 91 (1st Cir.2004))). In any event, it is highly unlikely that Siemens would contest our holding in Wind Tower Trade Coalition, given that it had the effect of limiting Siemens’s antidump-ing and countervailing duty liability.
For these reasons, I respectfully concur in part.

. "The two Commissioners who made affirmative determinations on the basis of material injury did not make a threat of material injury determination.” Siemens Energy, Inc. v. United States, 992 F.Supp.2d 1315, 1322 n. 6 (Ct. Int’l Trade 2014).

. The two step framework in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) governs judicial review of the Commission’s interpretation of the trade remedies statutes. Nucor Corp. v. United States, *1374 414 F.3d 1331, 1336 (Fed.Cir.2005). Considering the first step, " 'Congress has directly spoken to the precise question at issue’ ” in the present matter. Heino v. Shinseki, 683 F.3d 1372, 1377 (Fed.Cir.2012) (quoting Chevron, 467 U.S. at 842, 104 S.Ct. 2778). Thus, we need not address the second step of the Chevron analysis — whether the Commission’s "answer is based on a permissible construction of the statute.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778.

. For the Coalition to pursue such a claim, it would have had to name Commerce as a party to the suit, given that Commerce — not the ITC — determines when the duties become effective. Wind Tower Trade Coal., 741 F.3d at 96-100. Commerce is not a party to this appeal, nor was it a party before the CIT in this action. See generally Siemens, 992 F.Supp.2d 1315. In any event, the opportunity for further review of this issue by the Coalition expired when it declined to seek en banc review or file a petition for writ of certiorari, and res judicata would foreclose any attempt to relitigate the issue in this action.